OPINIONS OF THE SUPREME COURT OF OHIO
      The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
      Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Whitten, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
      NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


State Employment Relations Board, Appellee; Kelley, Appellant,
v. Adena Local School District Board of Education, Appellee.
[Cite as State Emp. Relations Bd. v. Adena Local School Dist.
Bd. of Edn. (1993),      Ohio St.3d     .]
State Employment Relations Board -- Unfair labor practice
      charge -- "In part" test used to determine the actual
      motivation of an employer charged with an unfair labor
      practice, construed and applied.
      (No. 92-135 -- Submitted February 10, 1993 -- Decided June
23, 1993.)
1.  The "in part" test to determine the motivation of an
      employer charged with an unfair labor practice is mandated
      by R.C. Chapter 4117.
2.  Under the "in part" test to determine the actual motivation
      of an employer charged with an unfair labor practice, the
      proponent of the charge has the initial burden of showing
      that the action by the employer was taken to discriminate
      against the employee for the exercise of rights protected
      by R.C. Chapter 4117.  Where the proponent meets this
      burden, a prima facie case is created which raises a
      presumption of antiunion animus.  The employer is then
      given an opportunity to present evidence that its actions
      were the result of other conduct by the employee not
      related to protected activity, to rebut the presumption.
      The State Employment Relations Board then determines, by a
      preponderance of the evidence, whether an unfair labor
      practice has occurred.
      Appeal from the Court of Appeals for Ross County, No. 1732.
      Appellant, Daniel Kelley, began employment as a vocational
agriculture teacher at Adena High School on July 1, 1976.
Appellee, Adena Local School District Board of Education ("the
board of education"), employed appellant under a series of
limited contracts, including a five-year limited contract which
expired in 1984.  In April 1984, the board of education issued
appellant a two-year probationary contract, and declined to
issue the continuing contract for which he was eligible.  The
board of education, in issuing the probationary contract,
followed the recommendations of Kenneth Putnam, principal of

Adena High School, and Paul D. Murphy, superintendent of schools.

In addition to classroom instruction, appellant's duties as a teacher of vocational agriculture included visitation of students to observe their employment in agriculture-related businesses. In observing students, appellant was required to visit their places of employment in the afternoons several times during the school year, and also to make visits in the summer under an extended service contract. Principal Putnam's reasons for recommending a probationary contract rather than a continuing one centered around his belief that appellant had failed to follow instructions from Putnam and Murphy requiring appellant to provide, and to adhere to, an accurate daily work schedule on the extended service days.

Several months before recommending that appellant receive a probationary contract, Principal Putnam, in an evaluation of appellant's performance dated February 28, 1984, graded appellant as "effective" in most evaluated areas. Appellant was graded as "needs improvement" in some areas, including establishing goals, keeping accurate records, accepting responsibility, and dependability. Appellant did not receive a grade of "unsatisfactory" in any of the twenty-two evaluation areas. The key at the top of the evaluation form explains that a grade of "effective" means that a teacher's performance has "[m]et district expectations" in that area; a grade of "unsatisfactory" means that the teacher's performance "[d]id not meet district expectations" and was a "possible consideration for non-renewal."

Superintendent Murphy advised appellant of Putnam's recommendation of a probationary contract, informing appellant that Murphy would support Putnam's recommendation. Murphy also informed appellant that his contract status would be evaluated at the end of the two-year period, at which time appellant either would be offered a continuing contract or would be nonrenewed pursuant to R.C. 3319.11. Murphy related to appellant that the future evaluation would be based on the following three factors:

"1. Your providing Mr. Putnam with an accurate daily work schedule for your extended service days and time spent outside of the classroom to meet Mr. Putnam's approval.

"2. The fact that you will meet the above mentioned schedule when provided unless prior notice is served to Mr. Putnam that you have to make changes.

"3. The fact that you will follow through and meet the obligations of any or all above mentioned schedule changes to the satisfaction of Mr. Putnam."

Appellant, a member of the Adena Education Association ("the teachers' union"), which had a collective bargaining agreement with the school board, filed a grievance in June 1984, claiming that the failure to offer a continuing contract violated the agreement. Appellant's grievance also objected to the placement of an anonymous "survey" in his personnel file, which detailed alleged instances of appellant's failure to comply with his student visitation schedule. The grievance was submitted to arbitration, with the arbitrator determining that the board of education did not violate the collective bargaining agreement when it offered a two-year probationary

contract. However, the arbitrator did sustain the second part of the grievance, and ordered the survey removed from appellant's personnel file. The arbitrator found that Principal Putnam, who acknowledged preparing the survey, violated the agreement by not discussing the document with appellant beforehand, or at least alerting appellant that the survey was in the file.

During the appellant's two-year probationary period, school officials evaluated his job performance several times. In an evaluation dated January 30, 1985, Principal Putnam again graded appellant as "effective" in most areas, this time including the area of keeping accurate records. Appellant was graded as "needs improvement" in some areas, including accepting responsibility and dependability. Once again, appellant received no grade of "unsatisfactory."

Putnam subsequently assumed the post of superintendent of the school district in 1985. Putnam's successor as principal of Adena High School, Jake Grooms, in an evaluation dated November 20, 1985, graded appellant as "effective" in most areas, but as "needs improvement" in two areas: adhering to board policies and accepting responsibility. Appellant received no grade of "unsatisfactory." On February 5, 1986, appellant was graded as "effective" in all areas by Grooms. Later that month, Grooms recommended to Putnam that appellant be issued a continuing contract.

On March 27, 1986, Putnam recommended to the board of education that appellant's teaching contract not be renewed. In a memorandum explaining his recommendation, Putnam stated: "Accurate daily work schedules have not been kept." Putnam went on to list specific instances when appellant either failed to submit proper work schedules or failed to adhere to established schedules. In the memorandum, Putnam informed the board members that a conversation with a supervisor from the Ohio Agricultural Education Service (which promulgates guidelines for vocational agriculture teachers) reinforced his position that "Mr. Kelley's performance in afternoon and extended time use is below expectancies."

The board of education unanimously accepted Putnam's recommendation, and in April 1986 appellant's contract was not renewed. This decision effectively ended appellant's employment, pursuant to R.C. 3319.11.

On June 30, 1986, the teachers' union filed an unfair labor practice ("ULP") charge on appellant's behalf with the State Employment Relations Board ("SERB"). The ULP charge alleged that appellant was not issued a continuing contract because he had filed a grievance over the school board's 1984 decision to issue him a two-year limited contract instead of a continuing contract, and had taken that grievance to arbitration. Thus, the teachers' union charged that the 1986 nonrenewal decision was motivated by a desire to retaliate against appellant for the exercise of protected rights, in violation of R.C. 4117.11(A)(1), (A)(3), and (A)(5).

SERB conducted an investigation and found probable cause to believe that a ULP had been committed. On August 14, 1987, SERB issued a complaint alleging that the board of education's decision to nonrenew appellant "was due in whole or in part because [sic] the employee had engaged in activities protected

by R.C. Chapter 4117." Paragraph nine of the complaint alleged that "the employee fulfilled the suggested areas of professional improvement" following the 1984 issuance of a probationary contract to appellant.

When SERB issued the complaint, it scheduled an evidentiary hearing for August 24, 1987. The board of education moved for a continuance of the hearing, which was granted by SERB's hearing officer. The hearing was rescheduled for October 26, 1987. The board of education filed an answer to the complaint on October 23, 1987. In addition to denying the allegations that appellant's nonrenewal was based on the exercise of rights protected by R.C. Chapter 4117, the board of education also denied paragraph nine of the complaint, thereby setting forth its position that appellant had not fulfilled the suggested areas of improvement.

At the hearing, SERB and appellant (who had intervened in the action) argued that the board of education's answer was untimely, and moved that the allegations of the complaint be deemed admitted pursuant to Ohio Adm.Code 4117-7-04(B), which provides that a failure to file a timely answer shall be deemed an admission of the complaint's allegations. The hearing officer granted the motion, finding the board of education's answer untimely. In so ruling, the hearing officer relied on R.C. 4117.12(B)(1), which provides that the charged party in a ULP action "shall within ten days from receipt of the complaint *** file an answer to the complaint ***." As a result, the factual allegations of the complaint were deemed admitted, including the allegation of paragraph nine that appellant had fulfilled the suggested areas of improvement. However, the hearing officer ruled that some of the allegations were conclusory in nature (and not factual) and did not deem those allegations admitted.

Because the board of education was deemed to have admitted that appellant had fulfilled the areas of improvement, the hearing officer precluded the presentation of any evidence to the contrary on that issue. However, the board of education was allowed to present evidence that appellant's nonrenewal was unrelated to the exercise of activities protected by R.C. Chapter 4117.

SERB's hearing officer issued a proposed order on October 31, 1988, determining that the facts of the case, "while circumstantial in nature, permit a reasonable inference to be drawn that Respondent's actions were motivated at least in part by Kelley's engagement in protected activity." In reaching this conclusion, the hearing officer relied on the deemed admission that appellant had fulfilled the suggested areas of improvement and on appellant's satisfactory performance evaluations. Because the deemed admission played a major role in the hearing officer's conclusion, it is impossible to speculate whether that conclusion would have been different if appellant's fulfillment of the areas of improvement had not been accepted as an established fact.

The hearing officer recommended that SERB order the board of education to immediately offer reinstatement to appellant with tenure effective at the commencement of the 1986-1987 school year and to compensate him for the same period (minus unemployment compensation or income from other employment).

In an "Order and Opinion" issued December 29, 1989, SERB overruled the board of education's exceptions and adopted the proposed order. SERB determined the hearing officer was correct in ruling that the board of education's answer was late, and so found that the factual allegations of the complaint were appropriately deemed admitted. SERB ultimately concluded that the board of education committed a ULP in violation of R.C. 4117.11(A)(1) and (3) when it denied appellant a continuing contract. In reaching its conclusion, SERB relied on the deemed admission that appellant had fulfilled the areas of improvement, appellant's favorable evaluations, and on Principal Grooms's recommendation to offer appellant a continuing contract.

In its opinion SERB stated: "*** the preponderance of the evidence supports the conclusion that Putnam's stated reason for not renewing Kelley's contract was a pretextual cover for an intent to retaliate for Kelley's exercise of his protected contractual grievance rights." SERB thus determined that this was a "pretext" case (one in which the employer's sole motivation is to retaliate for the employee's exercise of protected rights) rather than a "mixed motive" case (one in which an employer's action is partly motivated by a desire to retaliate and partly by legitimate reasons). SERB ordered the board of education to offer appellant a continuing contract, and awarded appellant back pay, minus any unemployment compensation or income from other employment received in the meantime.

The board of education appealed SERB's order to the Ross County Court of Common Pleas. The board of education contended, in part, that SERB erred (1) in ruling that the board of education's answer was untimely and in deeming the factual allegations of the complaint admitted on that basis, (2) in finding that the case was one of pretext, and (3) in finding that appellant's nonrenewal was motivated by antiunion animus.

After considering the record, a court-appointed referee issued a report, which sustained the board of education's first assignment of error. The referee determined that R.C. 4117.12(B)(1), in requiring that an answer to a ULP charge be filed within ten days of receipt of the complaint, is directory and not mandatory. Finding no prejudice to SERB in the board of education's filing its answer prior to the hearing, the referee found that SERB had erred in deeming the factual allegations of the complaint admitted.

Rather than recommending remand to SERB for a reevaluation of the facts, the referee proceeded to review the evidence relating to whether appellant had fulfilled the areas of improvement, which SERB had not considered due to the deemed admissions. The referee's report also partially sustained the assignment of error regarding the board of education's motivation, determining that this was not a pretext case. However, because the referee found that SERB had established that appellant's nonrenewal was motivated at least in part by a desire to retaliate against appellant for his exercise of protected rights in filing the grievance, the referee found that this was a "mixed motive" case. SERB's position on mixed motive cases at that time was that if an employer's actions

were motivated at least "in part" by a desire to retaliate against an employee for the exercise of protected rights, then the discharge (or nonrenewal in this case) is unlawful. See In re Gallia-Jackson-Vinton Joint Vocational School Dist. Bd. of Edn. (Nov. 13, 1986), SERB No. 86-044. The referee applied that approach, and ultimately recommended that SERB's order be affirmed, because substantial evidence in the record supported SERB's conclusion that a ULP occurred. On September 26, 1990, the court approved the referee's report and adopted it as its judgment.

The board of education appealed to the Court of Appeals for Ross County. In its first assignment of error, the board of education asserted that the trial court erred in finding this to be a mixed motive case. The board of education argued that no discriminatory motive was behind the decision to nonrenew appellant's contract. The court of appeals resolved this assignment of error by holding that "the court below abused its discretion in determining that appellant had committed an unfair labor practice since it should have remanded the case to SERB after it determined that SERB had erred in deeming the complaint's factual allegations admitted."[1]

In its second assignment of error, the board of education argued that the trial court erred in applying SERB's "in part" test to this case. The court of appeals decided that the "in part" test is "not a reasonable interpretation of R.C. Chapter 4117" and that the better approach is the "but for" test, which allows an employer to prove that an action against an employee would have been taken regardless of the employee's exercise of protected rights. Under this test, an employer acting in retaliation against an employee has not committed a ULP if the employer can show that the act would have been taken even if that discriminatory intent had not been present.

The court of appeals ruled that "the judgment of the court below is reversed and remanded for further proceedings, i.e., an ultimate remand to SERB, consistent with this opinion."

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Lee I. Fisher, Attorney General, and Joseph M. Oser, Assistant Attorney General, for appellee State Employment Relations Board.

Cloppert, Portman, Sauter, Latanick & Foley, Susan Hayest Kozlowski and Mark A. Foley, for appellant.

Means, Bichimer, Burkholder & Baker Co., L.P.A., Matthew J. DeTemple and Robert T. Baker, for appellee Adena Local School District Board of Education.

Alice Robie Resnick, J. For the reasons which follow, we find that the trial court did not abuse its discretion in ruling that substantial evidence in the record supported SERB's determination that a ULP occurred. We reverse the judgment of the court of appeals and reinstate the judgment of the trial court upholding SERB's order that appellee board of education offer appellant reinstatement and award him back pay.

I

In Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 259-261, 533 N.E.2d 264, 266-267,

this court explained that different standards of review are to be applied by a common pleas court and by a court of appeals when reviewing an order of SERB in a ULP case. When a common pleas court reviews a SERB order, the court must determine whether the order is supported by substantial evidence in the record. This standard of review for a common pleas court is supplied by R.C. 4117.13(D), which provides that "*** [t]he findings of the board [SERB] as to the facts, if supported by substantial evidence, on the record as a whole, are conclusive." See Lorain City Bd. of Edn., supra, at 259, 533 N.E.2d at 266.

An appellate court, on the other hand, plays a more limited role than a trial court in reviewing the same SERB order. The role of the appellate court is to determine whether the trial court has abused its discretion. The appellate court must affirm the judgment of the trial court if no abuse of discretion occurred. Id., 40 Ohio St.3d at 260-261, 533 N.E.2d at 267.

The trial court in this case reviewed SERB's order and determined that substantial evidence in the record supported SERB's conclusion that the board of education committed a ULP. The court of appeals, in reversing the judgment of the trial court, held that the trial court abused its discretion in ruling as it did. We thus examine the decision of the court of appeals, to determine if that court was correct in holding that the trial court abused its discretion.

A

The court of appeals based its decision that the trial court abused its discretion on the trial court's failure to remand the cause to SERB upon determining that SERB had ruled improperly that the allegations of the complaint were to be deemed admitted.2 We recognize that the trial court could have remanded the cause to SERB, to allow SERB to consider the facts surrounding the allegations improperly deemed admitted. The initial question we address is whether the trial court abused its discretion in failing to remand the cause to SERB.

The court of appeals held that the trial court had a duty to remand this cause to SERB, and that the failure to remand constituted an abuse of discretion. It appears that the court of appeals believed that when the trial court conducted its own review of the evidence not considered by SERB, the trial court usurped SERB's role as the finder of fact in ULP cases. However, even though we may agree that the trial court should have remanded the cause to SERB, it must be remembered that a court of appeals must affirm a trial court decision on a SERB order in a ULP case unless the trial court abused its discretion. "An abuse of discretion '"' *** implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'"'" Lorain City Bd. of Edn., supra, 40 Ohio St.3d at 261, 533 N.E.2d at 267, quoting State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster (1986), 22 Ohio St.3d 191, 193, 22 OBR 275, 277, 489 N.E.2d 288, 290.

We cannot agree that the trial court abused its discretion by not remanding this cause to SERB for further findings of fact. A thorough examination of the record in this case reveals that the board of education encouraged the trial court

to conduct its own consideration of the evidence not considered by SERB. The board of education requested that the trial court use evidence not considered by SERB to find that the decision to nonrenew appellant was not retaliatory. Specifically, the board of education urged the trial court "to reject SERB's jaundiced 'in part' standard of proof and find that the Board of Education has rebutted Kelley's prima facie case of discrimination and that SERB's Opinion and Order should be reversed."

In considering the evidence which SERB had refused to consider, the trial court did as the board of education desired. However, the trial court found circumstantial evidence of discriminatory intent in the record, and upheld SERB's finding that a ULP had been committed.3 We find it incongruous that the board of education should encourage the trial court to examine the evidence, and then benefit from a ruling by the court of appeals that the trial court abused its discretion when it examined the evidence. We hold that the trial court, in the circumstances of this case, did not abuse its discretion when it did not remand the cause to SERB.

B

Our inquiry does not stop there. We also consider whether the trial court abused its discretion when it found substantial evidence in the record to support the determination that a ULP occurred. It is apparent that the trial court did not abuse its discretion in this regard. The trial court recognized that the good evaluations given to appellant, as well as Principal Grooms's recommendation that appellant be given a continuing contract, were substantial circumstantial evidence of a discriminatory motive behind the decision to nonrenew appellant. These factors, considered along with appellant's improvement in setting work schedules and adhering to them (a finding we accept as factually established based on our discussion in Part IA of this opinion), clearly constitute substantial evidence to support the determination that a ULP occurred.

II

The trial court in this case, after examining the evidence, determined that the board of education's decision to nonrenew appellant was motivated both by legitimate and illegitimate reasons. The trial court then applied what was SERB's approach at that time in "mixed motive" cases, the "in part" test adopted in In re Gallia, supra. Because the employer's action was motivated at least in part by a desire to retaliate for the participation in a protected activity (filing a grievance), the trial court found that a ULP had occurred, and upheld SERB's order.

Upon appeal, the appellate court found that the trial court erred in applying the "in part" test, because that test cannot reasonably be reconciled with R.C. Chapter 4117. In ordering this cause remanded to SERB, the court of appeals noted that SERB has announced that it will now apply the so-called "but for" test, which has been applied by the National Labor Relations Board ("NLRB") since 1980. See In re Ft. Frye Local School Dist. Bd. of Edn. (July 17, 1991), SERB No. 91-005. The court of appeals determined that the "in part" test can lead to absurd results, because a ULP can be found

under that test when an employer's actions are motivated mainly by legitimate reasons, and only in small part by discriminatory ones. Thus, the appellate court found that the "but for" test is mandated by R.C. Chapter 4117.

We do not accept the conclusions drawn by the court of appeals. We therefore examine the "in part" and "but for" causation tests in light of R.C. Chapter 4117. We seek to determine which test, if either, comports with the goals of the General Assembly when it enacted those statutes, particularly R.C. 4117.11 (which defines ULPs) and R.C. 4117.12 (which guides SERB in its disposition of ULP charges).

The motivation behind an employer's decision to take an action regarding an employee is the central question that must be resolved in a ULP case. R.C. Chapter 4117 makes it SERB's responsibility to evaluate the factual situation surrounding a ULP charge, and to determine whether a ULP has in fact occurred. Determining the motivation underlying an employer's decision almost always presents difficulties which are not easily overcome. Motivation is rarely clear. An employer charged with a ULP will almost always claim that the particular action was taken for sound business reasons, totally unrelated to the employee's participation in protected activities. The employee will almost always claim that the action was taken to retaliate for his or her exercise of protected rights. Since evidence of the employer's motivation is rarely direct, SERB must rely on a good deal of circumstantial evidence in arriving at its conclusion. To facilitate consideration of ULP cases, administrative agencies (e.g., SERB and the NLRB) utilize causation tests to provide some uniformity in evaluating ULP charges and to give a reviewing court a framework for determining if substantial evidence supports the agency's decision. The "in part" and "but for" approaches are two examples of such causation tests.

A

R.C. Chapter 4117's treatment of ULP cases is modeled to a large extent on the federal statutes that empower the NLRB to resolve ULP charges in cases within its jurisdiction. Larson, Ashmus, Bumpass & Ward, Public Sector Collective Bargaining: The Ohio System (1984) 100. Thus, consideration of the NLRB's experience in applying the "in part" and "but for" tests can be instructive in resolving which test, if either, best accomplishes the goals embodied in Ohio's statutes regarding ULPs.

Between the 1930s and 1980, the NLRB, when evaluating ULP charges, applied the "in part" test. The NLRB construed the National Labor Relations Act ("NLRA"), Section 151 et seq., Title 29, U.S.Code, to provide that a ULP has occurred when the NLRB finds that an employer's action was taken at least in part to discriminate against an employee for engaging in protected activities, regardless of other reasons for the action. See, e.g., Consumers' Research, Inc. (1936), 2 N.L.R.B. 57, 73 (if antiunion animus plays any part in a discharge decision, a violation of the NLRA occurs); Dow Chem. Co. (1939), 13 N.L.R.B. 993, 1023, enforced in relevant part (C.A.6, 1941), 117 F.2d 455 (a violation occurs if the employer acts out of antiunion bias "whether or not the [employer] may have had some other motive in addition to that of repressing [protected

activity] and without regard to whether or not the [employer's] asserted motive was lawful").

In 1980, in Wright Line, Div. of Wright Line, Inc. (1980), 251 N.L.R.B. 1083, enforced (C.A.1, 1981), 662 F.2d 899, certiorari denied (1982), 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848, the NLRB changed the analysis it applied in resolving ULP cases. In Wright Line, the NLRB adopted a causation test commonly called the "but for" test, in an attempt to alleviate dissatisfaction over the "in part" test expressed by several federal courts of appeals. Id., 251 N.L.R.B. at 1083.4

In Wright Line, 251 N.L.R.B. at 1089, the NLRB set forth the following test to evaluate employer motivation in ULP cases: "First, we shall require that the General Counsel [of the NLRB] make a prima facie showing sufficient to support the inference that protected conduct was a 'motivating factor' in the employer's decision. Once this is established, the burden will shift to the employer to demonstrate that the same action would have taken place even in the absence of the protected conduct."

The Wright Line test allows the employer to present its alleged legitimate reasons for its actions as an affirmative defense. This causation test is commonly called the "but for" test because it establishes that a ULP has occurred when the evidence shows that "but for" the exercise of protected activity, the employer's action (e.g., a discharge) regarding the employee would not have been taken.

The Wright Line test was not uniformly embraced by the federal courts of appeals. See Comment, Transportation Management: The Validation of Wright Line (1984), 2 Hofstra Labor L.J. 185, 193-194. However, in Natl. Labor Relations Bd. v. Transp. Mgt. Corp. (1983), 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667, the United States Supreme Court held that the NLRB's Wright Line test was a permissible construction of the NLRA, and was entitled to deference. The court also found that the "in part" test applied before Wright Line "was plainly rational and acceptable." Transp. Mgt., 462 U.S. at 399, 103 S.Ct. at 2473, 76 L.Ed.2d at 673.

B

As we have said, the ULP provisions of Ohio's R.C. Chapter 4117 are modeled in many respects upon the NLRA. Since the General Assembly enacted R.C. Chapter 4117 to be effective in 1984, we may safely assume that that body was aware of the controversy in the federal courts concerning the NLRB's application of the "in part" and "but for" tests, and of Wright Line and Transp. Mgt. Both appellant and the board of education in this case argue that the General Assembly intended to codify a causation test in R.C. Chapter 4117, although they of course disagree as to which test was adopted.

A ULP occurs when an employer takes an action regarding an employee that is motivated by antiunion animus. See R.C. 4117.12(A) and 4117.11(A). R.C. 4117.12(B) details the procedure SERB is to follow in taking evidence, and in evaluating that evidence, to determine if a party has engaged in a ULP. R.C. 4117.12(B)(3) requires SERB to decide, based upon the preponderance of the evidence, whether the charged party has engaged in a ULP, and to act on its determination by issuing an order. The order to be issued by SERB is further

explained in R.C. 4117.12(B)(4). That statute specifically provides: "No order of the board [SERB] shall require the reinstatement of any individual as an employee who has been suspended or discharged, or require the payment to him of any back pay, if the suspension or discharge was for just cause not related to rights provided in section 4117.03 of the Revised Code ***."

Appellant reads R.C. Chapter 4117, and particularly R.C. 4117.12(B)(4), as requiring the "in part" test to determine causation in ULP cases. The board of education urges that R.C. Chapter 4117 mandates the Wright Line "but for" method of analysis. The trial court in this case found that appellant's interpretation was correct. The court of appeals, in reversing the trial court, held that the "in part" test is not a reasonable interpretation. Furthermore, SERB, in Ft. Frye, supra, has abandoned the "in part" test in favor of the "but for" test. In Ft. Frye, SERB specifically cited the trial court's opinion in this case, and disagreed with the trial court's interpretation of R.C. Chapter 4117. Thus, both the court of appeals in this case and SERB in Ft. Frye have found that the Wright Line approach is the correct test to determine employer motivation in ULP cases.

Initially, we cannot agree with the court of appeals that the "in part" test is not a reasonable interpretation of R.C. Chapter 4117. The "in part" test, because it focuses on the employer's motivation and requires a finding that a ULP has been committed when it is established that the motivation is improper, obviously comports with R.C. Chapter 4117. Clearly, when a preponderance of the evidence supports a finding that an employer acted at least in part to discriminate against an employee for the exercise of protected rights, SERB's finding of a ULP is a reasonable interpretation of the statutory directive.

We also do not agree with the court of appeals that R.C. Chapter 4117, and in particular R.C. 4117.12(B)(4), call for the "but for" test. In our view, the Wright Line "but for" method cannot be reconciled with R.C. Chapter 4117. Allowing the employer to present, as an affirmative defense, all the alleged legitimate reasons supporting the action against the employee turns the focus of the inquiry away from the employer's motivation. The inquiry instead then becomes focused on the employee's work record, and SERB's factual consideration becomes subsumed by both the employer's and employee's evidence on that question. Even though SERB has necessarily already concluded that the employer was motivated by improper reasons before the employer needs to present this evidence, the employer's improper motivation is sanctioned so long as the employer can convince the factfinder to accept its view of the employee's work history.5

Contrary to the assertions of the board of education, R.C. 4117.12(B)(4) does not authorize the "but for" test. That statute provides that SERB may not order the reinstatement of any individual "if the suspension or discharge was for just cause not related to rights provided in section 4117.03 of the Revised Code ***." We find that this statute, by limiting SERB's order when the employer's action was "not related to" protected rights, further emphasizes that a ULP must be found

when an employer's motivation is improper.  The "but for" test, because it turns the inquiry away from the employer's motivation, is not a reasonable interpretation of R.C. Chapter 4117.6

Even though we have found the "but for" approach to be inconsistent with R.C. Chapter 4117, we also find that, unless the employer is given an opportunity to counter the evidence presented by the employee, the "in part" approach will not be the most accurate test.  When, for example, it is determined that antiunion animus played a minuscule part in the employer's decision regarding an employee, a literal application of the "in part" test would appear to mandate a finding that the employer committed a ULP.  We find that R.C. Chapter 4117 does not require SERB to conclude that a ULP occurred in that circumstance.  The "in part" test must not be applied so narrowly.  Rather, the "in part" approach must be broad enough to take into account the actual or true motive of the employer.  Thus, only when the employer's decision regarding the employee was actually motivated by antiunion animus must a ULP be found.  In determining actual motivation in the context of the "in part" test, the requirements of R.C. Chapter 4117 are best fulfilled when SERB considers the evidence before it in the framework of a single inquiry, focusing on intent of the employer.

Hence, we hold that the "in part" test to determine the motivation of an employer charged with a ULP is mandated by R.C. Chapter 4117.  We further hold that under the "in part" test to determine the actual motivation of an employer charged with a ULP, the proponent of the charge has the initial burden of showing that the action by the employer was taken to discriminate against the employee for the exercise of rights protected by R.C. Chapter 4117.  Where the proponent meets this burden, a prima facie case is created which raises a presumption of antiunion animus.  The employer is then given an opportunity to present evidence that its actions were the result of other conduct by the employee not related to protected activity, to rebut the presumption.  SERB then determines, by a preponderance of the evidence, whether a ULP has occurred.

When the "in part" test is properly applied it results in a determination of the actual motive of the employer in taking the action.  This approach allows SERB to consider the employee's work history, but only as circumstantial evidence of the employer's motivation, and not as a separate inquiry characterized as an affirmative defense.  Thus, application of the "in part" test in this manner allows SERB, in resolving ULP charges, to focus on the important inquiry--the motivation of the employer.  The problems associated with the "but for" test and its burden-shifting, wrongly focused, bifurcated inquiry are avoided.

We realize that recognizing actual motivation to be a component of the "in part" test will not necessarily make SERB's task in determining employer motivation an easy one. SERB must still evaluate the evidence presented to determine if antiunion animus actually motivated the employer to take the action against the employee.  However, we are confident that this causation analysis will allow SERB to comport more closely

with the requirements of R.C. Chapter 4117 in resolving ULP cases.

## C

In applying the preceding discussion to the facts of this case, we find that the trial court did not err in applying the "in part" test to determine causation.  At the time the trial court rendered its judgment, the "in part" test of In re Gallia was the approach applied by SERB to resolve ULP cases.  As explained above, that approach was a reasonable interpretation of R.C. Chapter 4117.

## III

## Conclusion

Based on our discussion in Part I of this opinion, the trial court did not abuse its discretion in finding that appellant's nonrenewal was motivated by antiunion animus.  Based on our discussion in Part II of this opinion, we hold that the trial court correctly applied the law to its finding to reach an appropriate conclusion.  The judgment of the court of appeals is reversed, and the judgment of the trial court is reinstated.[7]

Judgment reversed.


A.W. Sweeney, Douglas, F.E. Sweeney and Pfeifer, JJ., concur.

Moyer, C.J., and Wright, J., concur in part and concur in judgment.


FOOTNOTES:
1  Neither SERB nor appellant appealed from the trial court's decision that SERB erred in deeming the factual allegations of the complaint admitted.
2  Because no appeal was taken from the trial court's determination that SERB erred in ruling that the allegations of the complaint were to be deemed admitted, we must assume that the trial court ruled correctly, and that the allegations of the complaint should not have been deemed admitted.
3  It is significant that SERB's record contained other circumstantial evidence of discriminatory motivation in addition to those factual allegations of the complaint which were deemed admitted.  The trial court did not conduct a new consideration of all factual material, only of that which it found SERB should have considered but did not.  This was not a situation in which the trial court made factual findings based totally on evidence never considered by SERB.
4  The NLRB in Wright Line borrowed the causation test from the decision of the United States Supreme Court in Mt. Healthy City School Dist. Bd. of Edn. v. Doyle (1977), 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471, in which an employee asserted that his discharge was motivated by a desire to retaliate against him for his exercise of First Amendment rights.  The Supreme Court in Mt. Healthy held that the plaintiff first had to show that the employer's dissatisfaction with the plaintiff's exercise of First Amendment protected activity played some role in the employer's decision to discharge him.  Once that showing was established, the burden then was on the employer to show that the discharge would have occurred even if no motive to punish the plaintiff for his First Amendment activity had been

present.  Id. at 287, 97 S.Ct. at 576, 50 L.Ed.2d at 484.

5  The board of education cites our recent decision in Cleveland Civ. Serv. Comm. v. Ohio Civ. Rights Comm. (1991), 57 Ohio St.3d 62, 565 N.E.2d 579.  The board of education argues that that case, which involved application of R.C. Chapter 4112 to a discrimination case, compels application of the "but for" test in the present case.  We find that Cleveland Civ. Serv. Comm., because it did not involve R.C. Chapter 4117, is not persuasive.

6  We are aware of the need to afford due deference to SERB's interpretation of R.C. Chapter 4117.  See Lorain City Bd. of Edn., supra, paragraph two of the syllabus.  However, when SERB's interpretation cannot be reconciled with the explicit language of R.C. Chapter 4117, that interpretation is not entitled to deference.

7  We are cognizant of the broad statement in R.C. 3319.11(G)(7) that "the determination whether to reemploy or not reemploy a teacher is solely a [board of education's] determination and not a proper subject of judicial review ***."  We find that the policy of nonreview must yield when interests implicated by R.C. Chapter 4117 are involved.  See R.C. 4117.10(A).

Wright, J., concurring in part and concurring in judgment.  While I am able to join Parts I, II(A), II(C), and III of the majority opinion, I cannot join Part II(B) or the syllabus.  There is simply no support in R.C. Chapter 4117 for the majority's conclusion that the chapter "mandate[s]" the use of the "in part" test.  Moreover, the majority deviates from this court's precedent and the scheme of R.C. Chapter 4117 by substituting its judgment for SERB's.

The Public Employees, Collective Bargaining Act, codified in R.C. Chapter 4117, creates "a comprehensive framework for the resolution of public-sector labor disputes by creating a series of new rights and setting forth specific procedures and remedies for the vindication of those rights."  Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9 (1991), 59 Ohio St.3d 167, 169, 572 N.E.2d 87, 90.  The linchpin in this framework is SERB, the entity in which primary authority for the administration of this system of rights and remedies is vested.  This court's precedent holds that in the adjudication of unfair labor practice ("ULP") charges, SERB's interpretation of the Act is to be given broad deference by the courts.  See Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 533 N.E.2d 264.

"It was clearly the intention of the General Assembly to vest SERB with broad authority to administer and enforce R.C. Chapter 4117. *** This authority must necessarily include the power to interpret the Act to achieve its purposes."  Id. at 260, 533 N.E.2d at 267.

Thus, in reviewing a SERB decision in a ULP case, the courts "must accord due deference to SERB's interpretation of R.C. Chapter 4117."  Id.  If courts could interpret R.C. Chapter 4117 without regard to SERB's construction, the General Assembly's creation of "a specialized administrative agency *** to make determinations" would have been pointless.  Id.

This court's decision in Lorain City Bd. of Edn., supra, mirrors the approach that has been taken by the federal

courts. The United States Supreme Court has recognized that "[t]he ultimate problem is the balancing of the conflicting legitimate interests" presented in labor cases. Natl. Labor Relations Bd. v. Truck Drivers Local Union No. 449, Internatl. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., A.F.L. (1957), 353 U.S. 87, 96, 77 S.Ct. 643, 648, 1 L.Ed. 2d 676, 682. The court wrote that "[t]he function of striking that balance to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review." Id. See, also, Natl. Labor Relations Bd. v. Erie Resistor Corp. (1963), 373 U.S. 221, 236, 83 S.Ct. 1139, 1150, 10 L.Ed.2d 308, 319 ("we must recognize the Board's special function of applying the general provisions of the Act to the complexities of industrial life"); Natl. Labor Relations Bd. v. J. Weingarten, Inc. (1975), 420 U.S. 251, 266, 95 S.Ct. 959, 968, 43 L.Ed.2d 171, 183.

Thus, when SERB construes the Act in a permissible fashion, the courts should not interfere. It is only when the agency makes a decision that is without support under the law that we may impose our construction of the statute. See, e.g., Ohio Historical Soc. v. State Emp. Relations Bd. (1993), 66 Ohio St.3d      ,      N.E.2d      (SERB's ruling that historical society is a public employer was without support in the Act).

The majority admirably sets forth the terms of the debate over the "in part" and the "but for" tests. In my view, however, its discussion of the law leads inexorably to the conclusion that both tests are permissible under R.C. Chapter 4117 and neither is "mandated." It is precisely on this point that the majority errs.

Prior to 1991, SERB used the "in part" test in mixed motive cases. In In re Gallia-Jackson-Vinton Joint Vocational School Dist. Bd. of Edn. (Nov. 13, 1986), SERB No. 86-044, SERB adopted the "in part" test and expressly declined to follow the "but for" test. On two subsequent occasions SERB expressly declined to abandon the "in part" test. See In re Ohio Dept. of Transp. (Oct. 8, 1987), SERB No. 87-020; State Emp. Relations Bd. v. Adena Local School Dist. Bd. of Edn., (Dec. 29, 1989), SERB No. 89-034. For many of the reasons enunciated in the majority opinion, I believe that this test is permissible under R.C. Chapter 4117 in mixed motive cases.

In 1991, however (after this case had been decided by SERB, appealed to and decided by the common pleas court, and appealed to the court of appeals), SERB changed its position and expressly adopted the "but for" test of Wright Line, Div. of Wright Line, Inc. (1980), 251 N.L.R.B. 1083. In re Ft. Frye Local School Dist. Bd. of Edn. (July 17, 1991), SERB No. 91-005. It explained, "the time has come for SERB to change its initial 'in part' test to the more balanced, more mature and more reasonable 'but for' test." Id. SERB now feels, as many state labor boards do, "that the existence of discrimination on the basis of protected rights is most accurately determined by asking whether the disciplinary act would have occurred but for the protected activity." Id. It has decided that labor and management interests are most effectively balanced by using the "but for" test. Id. SERB's

written opinion in Ft. Frye, supra, persuades me that the "but for" test is also permissible under R.C. Chapter 4117.

In Natl. Labor Relations Bd. v. Transp. Mgt. Corp. (1983), 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667, the United States Supreme Court considered whether the National Labor Relations Board's use of the Wright Line "but for" test was proper under the National Labor Relations Act. The court deferred to the board; it held that the Wright Line test would not be disturbed because it is not "an impermissible construction of the Act." Id. at 402, 103 S.Ct. at 2475, 76 L.Ed.2d at 676. This court should now adopt the same position with regard to both the "in part" and the "but for" tests as used by SERB.

R.C. Chapter 4117 neither mandates nor prohibits the use of either the "in part" or the "but for" tests. The Act is worded broadly enough to easily accommodate both approaches and I believe that this is just what the General Assembly intended. The majority, in fact, does not hold that the language of the Act leads to the conclusion it reaches.[8]

The majority, instead, treats its decision as a labor policy choice -- a political choice. And, of course, it is. The majority has made the essentially political decision that "the requirements of R.C. Chapter 4117 are best fulfilled" when SERB uses the "in part" test. (Emphasis added.) But the judgment as to what "best fulfill[s]" the requirements of the Act has been vested by the General Assembly in SERB -- not this court. Our inquiry in ULP cases should begin, and end, with the question of whether what SERB did was permissible -- not whether it was "best."

Moreover, there are serious questions in my mind as to whether SERB will be able to apply the test promulgated by the majority. The test amounts to the "in part" test with a caveat: the antiunion animus must be more than a "minuscule part" of the employer's motivation. The majority writes that "only when the employer's decision regarding the employee was actually motivated by antiunion animus must a ULP be found." (Emphasis added.) This sounds to me as much like the "but for" test as the "in part" test. Under the "but for" test a ULP occurs if the employee would not have been disciplined but for his or her protected activities. Under the majority's test, SERB is charged with finding whether the employer was "actually motivated" by the employee's exercise of protected activities. These two inquiries seem much the same to me and my concern is that SERB will be as confused as I am and will not be able to effectively apply the majority's test. Of course, this problem would not arise if SERB, instead of this court, was allowed to formulate and follow its own permissible tests.

This case was decided by the common pleas court when SERB was using the Gallia-Jackson "in part" test. That court appropriately deferred to the SERB test and found a ULP. The court of appeals, however, erred by substituting its judgment for SERB's and mandating the "but for" test. Although it reaches a different conclusion, a majority of this court now commits the same sort of error -- it substitutes its judgment for SERB's in order to obtain the political result it desires.

Both precedent and sound judicial policy require that we consistently show deference to SERB's handling of ULP cases. We have held that SERB, a "specialized administrative agency"

with "considerable expertise in labor-management relations," is entitled to deference.  Lorain City Bd. of Edn., supra, 40 Ohio St.3d at 260, 533 N.E.2d at 267.  Yet the majority seems willing to extend this deference to SERB only if SERB reaches the conclusion the majority would have reached.

I express no opinion as to which of the two tests I prefer or believe to "best fulfill" the goals of the Act.  I would merely hold that both the "in part" and "but for" tests are permissible under R.C. Chapter 4117 and that the court of appeals erred by mandating the "but for" test.

Moyer, C.J., concurs in the foregoing opinion.

FOOTNOTE:

8  The majority begins Part II(B) of its opinion by observing that in 1984, when the Act was passed, the General Assembly must have been aware of the debate over the test to be used in mixed-motive cases.  It also correctly states that by 1984 the National Labor Relations Board was firmly committed to the Wright Line "but for" test and that the use of this test had been sanctioned by the United States Supreme Court. Contrary to the majority's implication, I would guess that, given the state of the law at the time, if the General Assembly had considered which test would be used in mixed-motive cases, it would have believed that SERB would adopt the "but for" test.  But, as I have stated, the language of the Act is broad enough to tolerate both tests and that, I believe, is exactly what the legislature intended.