The State Employment Relations Board ("SERB") and the Ohio Association of Public School Employees ("the Association") appeal the decision of the Lawrence County Court of Common Pleas, which reversed SERB's determination that the Fairland Local School District Board of Education ("Fairland Board") engaged in an unfair labor practice by terminating its employee, Chancie Love.
SERB and the Association argue that the trial court erred in finding that SERB's decision is not supported by substantial evidence. Because we find that there is substantial evidence that supports SERB's decision, we agree. Accordingly, we reverse the judgment of the trial court.
 I.
Love began his job with Fairland Local School District ("the District") as a bus driver. During the time that he was a bus driver, Love was disciplined at least three times. The first time, he was suspended for three days for threatening a parent of a student. The second time, Principal Lewis generated and signed a written warning after Lewis caught Love smoking on school grounds. Whether Love received this warning became an issue during a November 1997 deposition concerning Love's appeal of the three-day suspension. According to Love, he never received the written warning. Lewis could not recall whether he ever gave the written warning to Love. The third time, Love became involved in a clash with Fairland's track team and their coach. Love was not happy with the team's behavior on his bus. As a result, Love permanently banned the team's coach, Mr. Whitley, from boarding his bus on any future occasion. After Whitley was promoted to assistant principal, he attempted to board Love's bus. Love refused to allow Whitley on the bus. The Fairland Board suspended Love for fifteen days for his behavior.
Even though the Fairland Board had suspended Love for a total of eighteen days, it promoted Love to a full-time position as a custodian at Fairland East Elementary School.
During his employment with Fairland, Love was very active in the Association. Love's Association activities included: (1) filing grievances on his own behalf and, as grievance chairperson, on the behalf of others; (2) participating in the processing of an unfair labor charge; (3) negotiating, with other Association members, a new contract; (4) serving as the Association's vice president; and (5) endorsing, along with other Association members, candidates for the Fairland Board. In November 1997, several Fairland Board members ran for reelection. At a "meet — the candidates" night, Love and the Association endorsed a slate of non-incumbents. However, none of the candidates that Love endorsed won the election. The Fairland Board was aware of Love's Association activities.
In December 1997, Fairland East Elementary School held their annual Christmas Party. The invitations asked the guests to bring food, games, and a "gag gift." On the night of the party, Love and his co-worker, Randy Owsley, decided not to go to the party because neither had a gag gift. According to Love, Owsley suggested that they use some jokes that Owsley had previously told Love. Love wrote down one of the jokes as Owsley repeated it. The joke was filled with sexual innuendo, but contained no explicit sexual references.
Love and Owsley presented the paper to the partygoers. Love encouraged the teachers to read the joke out loud. A teacher, Wendy Giles, read the joke to the group. No one laughed during the joke. Once she was finished, Love and Owsley left the party. Shortly thereafter, everyone else left.
The next day, several teachers complained about the joke to Fairland East's principal, Teresa Johnson. They asserted that the joke created a hostile workplace and was sexual harassment. Johnson told the teachers to write down their complaints. In response, one teacher wrote a letter, which other teachers signed. Johnson forwarded the letter to the Superintendent, Jerry McConnell.
McConnell conducted an investigation of the incident and recommended that the Fairland Board terminate Love's employment. McConnell did not make any recommendation concerning Owsley or Giles.
In March 1998, the Fairland Board voted to terminate Love for lying in his November 1997 deposition and for violating its sexual harassment policy at the Christmas Party.
In May 1998, the Fairland Board acted on another allegation of sexual harassment. A parent accused girl's basketball coach Jack Harris of violating the policy by judging a wet t-shirt contest at a non — school party. Several of the contestants were Fairland students. At least one was Harris' student and at least one was a player on Harris' team. There were conflicting reports of whether Harris encouraged the girls to remove their t-shirts. The Fairland Board began the process to terminate Harris. However, once Harris begged the Fairland Board for his job back, the Fairland Board imposed only the loss of his supplemental coaching contracts for one year.
The Association filed a charge of unfair labor practices against the Fairland Board with SERB. Once SERB determined that there was probable cause to believe that the Fairland Board committed an unfair labor practice, SERB presented the complaint to a SERB Administrative Law Judge ("AU"). The AU held two days of hearings and concluded that the Fairland Board had been motivated, at least in part, to terminate Love because of Love's protected activities. Thus, the AU determined that the Fairland Board violated R.C. 4117.11 (A) (1) and 4117.11 (A) (3) SERB adopted the AU's findings of fact and conclusions of law.
Pursuant to R.C. 4117.13, the Fairland Board appealed SERB's decision to the Lawrence County Court of Common Pleas. The trial court held that there was no evidence that Love's termination was a result of or based in part on his union activities. The trial court granted the appeal and reinstated the Fairland Board's order of termination.
SERB appeals and asserts the following assignment of error:
 I. THE LAWRENCE COUNTY COURT OF COMMON PLEAS ERRED TO THE PREJUDICE OF APPELLANT [SERB] AND ABUSED ITS DISCRETION WHEN IT REVERSED APPELLANT [SERB]'S ORDER THAT APPELLEE [FAIRLAND BOARD] COMMITTED AN UNFAIR LABOR PRACTICE WHEN IT TERMINATED CHANCIE LOVE'S EMPLOYMENT CONTRACT.
The Association also appeals and asserts the following assignment of error:
 I. THE TRIAL COURT ERRED WHEN IT RULED THERE WAS NOT SUBSTANTIAL EVIDENCE IN THE RECORD TO SUPPORT THE FINDING OF [SERB] THAT THE APPELLEE COMMITTED AN UNFAIR LABOR PRACTICE WHEN IT DISMISSED EMPLOYEE CHANCIE LOVE FOR HIS EXERCISE OF RIGHTS PROTECTED BY CHAPTER 4117 OF THE REVISED CODE.
 II.
Because the Association and SERB advance similar arguments in their assignments of error, we discuss them together.
The Fairland Board argues that pursuant to Lorain City SchoolDistrict Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, we must affirm the trial court's decision absent an abuse of discretion. SERB argues that the trial court's determination that SERB's order is not supported by substantial evidence is a legal question, which we review de novo.
In University Hospital v. State Emp. Relations Bd. (1992),63 Ohio St.3d 339, the Ohio Supreme Court recognized that we generally use the abuse of discretion standard of review when reviewing SERB's decision and the trial court's review of SERB's decision, but explained:
 [W]hile resolution of conflicting evidence is the province of SERB, the determination of whether the order of the agency can withstand the standard of review prescribed by R.C. 4117.13 (D) is essentially a question of law for the court of common pleas. As such, a reviewing court which seeks to ascertain whether the common pleas court has applied the appropriate standard of review to SERB's factual findings is not compelled to adhere to the conclusion reached by the common pleas court. Rather, it is the prerogative and the responsibility of the court entertaining the appeal to investigate whether the lower court accorded due deference to the factfinder. This is not unlike the function performed by this court in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, and in Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, and prescribed by R.C. 119.12 for courts of appeals. Where the common pleas court has not properly deferred to the factual determinations of the agency as required by R.C. 4117.13 (D), it is within the authority of the appellate court to reverse the lower court and reinstate the order of the agency.
 We therefore hold that the conclusion by a court of common pleas that an order of the State Employment Relations Board is not supported by substantial evidence on the record is a legal determination fully reviewable by the court of appeals.
Id. at 333 — 334 (footnote omitted). Thus, we review the trial court's decision de novo.
 [T]he proponent of the unfair labor practice charge has the initial burden of showing that the action by the employer was taken to discriminate against the employee for the exercise of rights protected by R.C. Chapter 4117. Where the proponent meets this burden, a prima facie case is created that raises a presumption of antiunion animus. The employer is then given an opportunity to present evidence that its actions were the result of other conduct by the employee not related to protected activity, to rebut the presumption. SERB then determines, by a preponderance of the evidence, whether a ULP has occurred.
State Empl. Relations Bd. v. Adena Local School Dist. Bd. of Edn.
(1993), 66 Ohio St.3d 485, paragraph two of the syllabus.
After receiving the ALJ's proposed order, SERB found that the Fairland Board violated R.C. 4117.11 (A) (1) and (A) (3) by discriminating against Love for engaging in protected activities. SERB applied the Adena "in part" test and determined that "[a] reasonable inference can be drawn from the facts surrounding and leading to [Love's] termination that the [Fairland] Board's actions were motivated by [antiunion] animus. Thus, the Complaint has established the necessary [prima facie] case to raise the rebuttable presumption that the [Fairland] Board had discriminated against him." SERB went on to find the Fairland Board's efforts to rebut the presumption unconvincing. SERB found that the following efforts support the presumption:
(1) the disparate treatment of Love and Owsley, i.e., Love, a union activist, was investigated and terminated for the Christmas party incident while Owsley, not a union activist, was activist, was not even investigated for his part in the incident; (2) the proximity in time between Love's significant union activities and his termination; (3) the vastly inconsistent treatment of Harris, who was not a union activist, and Love.
The trial court determined that SERB's decision was not supported by substantial evidence. The trial court determined that Love's actions were sexual harassment, but that Harris actions were obviously not. The trial court dismissed the Fairland Board's disparate treatment of Love and Owsley by stating "[j]ust as no two children in the same family are alike neither are the backgrounds and situations of [Owsley, Giles and Love.]" The trial court also dismissed the comparison of the discipline of Love to the discipline of Harris because "[c]omparing one to the other is like comparing apples and oranges.
We find that the trial court erred in determining that there was no substantial evidence to support SERB's determination. The disparate treatment of Love when compared to the other people involved in the Christmas party incident (Owsley and Giles) suggests that Love was singled out for discipline. The vastly disparate punishment for Harris' actions and Love's actions also suggest that Love was singled out for a harsh punishment. We do not agree with the trial court that SERB could not rely on the Fairland Board's disparate treatment of his employees. See In reColumbus Bd. of Health, City of Columbus (Mar. 26, 1996), SERB No. 96-003, unreported, citing Turnbull Cone Baking Co. v. NLRB
(C.A.6, 1985), 778 F.2d 292, 297 (The discriminatory motivation of an employer may be reasonably inferred from a variety of factors including, but not limited to: (1) inconsistencies between the proffered reason for discharge and other actions of the employer, (2) disparate treatment of certain similarly situated employees, and (3) the proximity in time between the employee's union activities and the employee's discharge). See, also, W.F. Bolin Co. v. NLRB (1995), 70 F.3d 863, 871. This disparate treatment coupled with the timing of Love's union activities and his termination constitutes substantial evidence supporting SERB's decision. Accordingly, we sustain the Association's and SERB's assignments of error and reverse the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed to appellee.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Evans, J.: Concur in Judgment Only.
_________________ Roger L. Kline, Presiding Judge