OPINION
This cause comes on timely appeal from a judgment of the Mahoning County Common Pleas Court overruling objections to a magistrate's decision reversing a decision of appellant, the State Employment Relations Board, that the dismissal of appellant, Matthew Romeo, as a township employee was a violation of R.C. 4117.11(A)(1) and (A)(3). The trial court entered judgment in favor of appellee, the Austintown Township Trustees.
On July 10, 1998, Matthew Romeo (Romeo) filed an unfair labor practice (ULP) charge with the State Employment Relations Board (SERB), alleging discharge in retaliation for engaging in unionization, a protected activity. SERB dismissed the original charge. On December 18, 1998, a request for reconsideration was filed and based on new information SERB found probable cause that an ULP had been committed. On February 22, 1999, a complaint was issued and a hearing was scheduled before an administrative law judge (ALJ). Following two days of hearings and the filing of briefs, on June 16, 1999 the ALJ issued her proposed order finding that appellee had violated the applicable statutory sections. The ALJ, after analysis of Romeo's unionization activities and comparing his disciplinary record with other township road department employees, opined:
"The Respondent has failed to rebut the inference that its actions were related to Mr. Romeo's protected activities. If it were not for disparate treatment among Township employees, reliance upon Mr. Romeo's disciplinary record, as other conduct not related to protected activity, would have substantial merit. In many respects, he was not a model employee. He continued to dump his personal trash in the Township dumpster in accordance with common practice, but not with common sense. He reported one accident after some delay, again not reflective of a great deal of common sense. He responded to a legitimate question by a Foreman in a rude fashion. In and of itself, his disciplinary record could, under ordinary circumstances, justify termination with no questions asked. If it were not for the disciplinary records of his fellow employees, no eyebrows would be raised. Comparing Mr. Romeo's record to those of others still employed by the Township, however, is proper evidence of the actual motivation of the Respondent." Citing StateEmp. Relations Bd. v. Adena Loc. School Dist. Bd. of Edn. (1993),66 Ohio St.3d 485, 494-495.
On September 17, 1999, SERB adopted the ALJ's findings and conclusions, but modified the order as to the issue of back pay. On October 1, 1999, appellee appealed from SERB's decision to the common pleas court. Romeo intervened and all parties filed briefs on the appropriateness of the SERB decision.
The case proceeded before a magistrate. On May 1, 2000, the magistrate issued an extensive decision reversing SERB, finding that appellee had supplied substantial, reliable and probative evidence that Romeo's termination was the result of his conduct and not due to his protected union activity. On June 12, 2000, the trial court overruled all objections and adopted the Magistrate's Decision as the court order. Appellants filed a timely appeal with this court and we issued a stay on October 4, 2000, enabling SERB's decision to remain in effect pending the outcome of this appeal.
Appellants present the following assigned error:
 "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED APPELLANTS' OBJECTIONS AND ADOPTED THE MAGISTRATE'S DECISION AS AN IMPROPER STANDARD OF REVIEW WAS APPLIED WHEN ADDRESSING THE VALIDITY OF SERB'S DECISION."
Appellant contends the magistrate failed to defer to SERB's factual findings and instead conducted a de novo review of the testimony and substituted his judgment for that of SERB. Such failure is a sufficient basis to reverse the lower court and reinstate the SERB order. UniversityHosp. v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, 344.
We must examine this case in light of the applicable standards of review for both this court and the trial court.
When reviewing a SERB decision on an unfair labor practice charge, the trial court's standard of review is whether substantial evidence exists to support the SERB decision. Lorain City Bd. of Edn. v. State Emp.Relations Bd. (1988), 40 Ohio St.3d 257, paragraph one of the syllabus; R.C. 4117.13(D).
In most instances, when reviewing a trial court's decision affirming or reversing a SERB decision, an appellate court must apply an abuse of discretion test. See Genesis Outdoor, Inc. v. Ohio Dept. of Transp. (Nov. 12, 1996), 7th Dist. No. 95 C.A. 30. Abuse of discretion connotes more than an error of judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. However, as the Ohio Supreme Court has stated:
"* * * while resolution of conflicting evidence is the province of SERB, the determination of whether the order of the agency can withstand the standard of review prescribed by R.C. 4117.13(D) is essentially a question of law for the court of common pleas. As such, a reviewing court which seeks to ascertain whether the common pleas court has applied the appropriate standard of review to SERB's factual findings is not compelled to adhere to the conclusion reached by the common pleas court. Rather, it is the prerogative and the responsibility of the court entertaining the appeal to investigate whether the lower court accorded due deference to the fact finder. * * * Where the common pleas court has not properly deferred to the factual determinations of the agency as required by R.C.4117.13(D), it is within the authority of the appellate court to reverse the lower court and reinstate the order of the agency." UniversityHosp., 63 Ohio St.3d at 343-44.
 Thus, when considering whether the trial court applied the appropriate standard of review, an appellate court shall apply a de novo standard of review to make that determination. State Emp. Relations Bd. v. Fairland Local School Dist. Bd. of Edn. (Sept. 7, 2000), 4th Dist. No. 00 C.A. 10.
In examining whether an unfair labor practice occurred, when the decision to terminate is based on both legitimate and illegitimate reasons, the court in such mixed motive cases is to apply the "in part" causation test. The motivation behind an employer's decision to take action is the central question that must be resolved in an unfair labor practice case. In applying the "in part" test to determine motivation in R.C. 4117 cases the Ohio Supreme Court stated in Adena Local SchoolDist. Bd. of Edn., 66 Ohio St.3d at 499:
 "* * * under the `in part' test to determine the actual motivation of an employer charged with a ULP, the proponent of the charge has the initial burden of showing that the action by the employer was taken to discriminate against the employee for the exercise of rights protected by R.C. Chapter 4117. Where the proponent meets this burden, a prima facie case is created which raises a presumption of antiunion animus. The employer is then given an opportunity to present evidence that its actions were the result of other conduct by the employee not related to protected activity, to rebut the presumption. SERB then determines, by a preponderance of the evidence, whether a ULP has occurred."
On consideration of the proper standard of review and the causation test involved in analysis by the Board, we address the merits of this case.
In his review of the evidentiary material presented by stipulation or through testimony, the magistrate recounted the following reports of misconduct by Romeo:
 "1. November 23, 1994 — During a break Romeo bumped a cup of coffee in his supervisor's hand, causing it to splash on his supervisor. The supervisor then spilled the remainder of the coffee on Romeo's shoe. When the supervisor went to get more coffee Romeo took the pot and poured it over the supervisor's head, which scalded his neck and eardrum. Although termination was recommended, the supervisor interceded. The supervisor received a ½ day suspension and Romeo a full day without pay;
 "2. March 25, 1995 — Romeo received a verbal warning for using a township truck to pick up private debris. Romeo denied the event;
 "3. September 27, 1995 — Upon complaint of a citizen, Romeo received another verbal warning after dumping concrete from his private truck into the township dumpster;
 "4. June 7, 1996 — Romeo received a written reprimand after backing a township truck into another vehicle;
 "5. July 30, 1996 — Romeo received a verbal warning after he and his crew were discovered asleep on the job. Romeo denied being asleep, only waiting for the rain to stop so they could continue cutting grass. This warning also included a warning that Romeo not clock out early, as he had been to attend to private business;
 "6. August 6, 1996 — Romeo was caught leaving his crew on an unsupervised break at a Hardee's restaurant. (He allegedly went to vote). When he returned Romeo became belligerent and uttered profanities towards his supervisor. Romeo received a one-day suspension without pay for insubordination, six months probation, and removal from grass crew supervisory staff;
 "7. January 23, 1998 — Romeo damaged a township truck by striking another private vehicle. He failed to immediately report it to police. He received a written reprimand;
 "8. June 2, 1998 — While on vacation Romeo brought a load of private debris to dump in the township dumpster. A supervisor refused to give him keys to access the dumpster. When Romeo returned to his truck he noticed his truck had gouged the garage door. In the meantime another supervisor had arrived and opened the gate. Romeo proceeded to dump his trash and failed to report the property damage to the police. Hours later Romeo contacted his supervisor after being warned that failure to report an accident can result in the loss of a license."
The magistrate then proceeded to distinguish disciplinary reports on other employees. It may be gleaned from the record that the township had no formal disciplinary policy and application of a sanction was discretionary with the Township Trustees after a review of a supervisor's recommendation.
We note at this juncture that the ALJ highlighted the timing of some of these infraction reports as the same time or shortly thereafter that Romeo was involved in organizing efforts for AFSCME at the end of 1995 and early 1996. His 1995-1996 unionization activities failed. It is undisputed that Romeo engaged in protected activity, including wearing a union hat, a union pin on his jacket and union bumper stickers on his vehicle. In February 1997, Teamsters Local 377 filed a "Petition for Representation Election" with SERB. In June 1997, the Union was certified as the exclusive bargaining representative.
While Romeo was outwardly vocal in his support of the union, he did not serve on the union bargaining team. He did, however, attend one meeting as a substitute bargaining team member. Romeo testified that he would discuss his pro-union stance with anyone who would listen.
The magistrate considered the testimony of other township employees and determined that Romeo had made a prima facie case of a ULP. The magistrate then examined whether the township rebutted the prima facie cause of dismissal. He found there was substantial evidence that Romeo's termination was for several incidents of misuse of township property, insubordination, violating township policy on a number of occasions, blatant disregard for authority and his prior disciplinary history, including an act of violence. Therefore, the magistrate found that the termination resulted not from protected union activity but from Romeo's conduct. The magistrate found that the township was not motivated by anti-union animus. While the ALJ found disparate punishment meted out to employees for misconduct, the magistrate found no disparate treatment.
In his decision, the magistrate articulated the proper standard of review and noted that he must give due deference to the interpretation of the evidence by SERB. (Mag. Decision, p. 16-17). The magistrate also referred to the "in part" test that SERB was required to apply. (Mag. Decision, p. 18).
The magistrate found that substantial evidence existed to support a prima facie case of a ULP. (Mag. Decision, p. 25). However, he also found that there was substantial evidence that Romeo's employment was terminated because of his several incidents of misuse of township property, violating township policy on a number of occasions, insubordination, blatant disregard of authority, and his prior disciplinary history, including one act of violence. (Mag. Decision, p. 25). More importantly, the magistrate found that substantial evidence did not exist to support the ALJ's finding of disparate treatment, which supported the finding of appellee's improper motivation. (Mag. Decision, p. 30). The ALJ stated in her decision:
 "If it were not for disparate treatment among Township employees, reliance upon Mr. Romeo's disciplinary record, as other conduct not related to protected activity, would have substantial merit. * * * In and of itself, his disciplinary record could, under ordinary circumstances, justify termination with no questions asked. If it were not for the disciplinary records of his fellow employees, no eyebrows would be raised." (ALJ Decision, p. 10).
Thus, this case turned on whether there was substantial evidence to support the finding of disparate treatment. The magistrate took considerable time to review the evidence in support of and against this finding. He detailed the disciplinary histories of other township road department employees and found that for non-accident incidents of discipline, Romeo had seven violations while the rest of the road department had nine. The magistrate also found that in Romeo's other instances of discipline, appellee frequently treated him more favorably than other employees. Since the magistrate found that there was not substantial evidence to support the ALJ's finding of disparate treatment, he properly reversed SERB's decision.
The magistrate made clear that he knew the appropriate standard of review and that he applied it by carefully scrutinizing the record and searching for evidence to support the ALJ's findings. The magistrate conducted an exhaustive review and did a credible job demonstrating justification for Romeo's discharge. It is not apparent that the trial court applied the wrong standard of review when it overruled appellant's objections and adopted the magistrate's decision. Accordingly, appellant's assignment of error is without merit.
For the reasons stated above, the decision of the trial court is hereby affirmed.
Vukovich, J., and DeGenaro, J., concur.