OPINIONS OF THE SUPREME COURT OF OHIO
**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

State Employment Relations Board, et al., Appellants, v. Miami University, Appellee.

[Cite as State Emp. Relations Bd. v. Miami Univ. (1994), Ohio St.3d .]

Public employees' collective bargaining -- Ohio public employer commits unfair labor practice in violation of R.C. 4117.11(A)(5) when it unilaterally terminates bargaining with an incumbent union, despite its good faith doubt as to the union's continued majority status.

An Ohio public employer may not unilaterally withdraw recognition of and/or refuse to bargain collectively with an incumbent union, despite any good faith doubt the employer may have concerning the union's continuing majority status.

(Nos. 93-2129 and 93-2211 -- Submitted November 30, 1994 -- Decided December 23, 1994.)

Appeal from the Court of Appeals for Butler County, No. CA93-03-0040.

On January 15, 1986, following a representation election conducted by appellant State Employment Relations Board ("SERB"), appellant Ohio Council 8, American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME") was certified as the exclusive representative of a bargaining unit consisting of non-teaching support and maintenance employees of appellee, Miami University ("Miami"). Thereafter, AFSCME and Miami entered into a collective bargaining agreement effective August 22, 1986 through August 21, 1989. On May 2, 1989, an employee in the bargaining unit filed a petition for decertification election with SERB seeking to decertify AFSCME as the exclusive representative. SERB dismissed the petition for decertification without prejudice and reaffirmed such dismissal upon reconsideration.1 No attempt has been made to refile the petition.

Following SERB's dismissal of the petition for decertification, AFSCME requested the commencement of

negotiations.  Miami refused to bargain on the basis that it "has doubt as to the continued majority status of AFSCME." Thereafter, Miami unilaterally implemented a number of changes in the wages and terms and conditions of employment of AFSCME's bargaining unit employees.

Beginning June 26, 1989, AFSCME filed three unfair labor practice ("ULP") charges with SERB alleging that Miami had violated R.C. 4117.11(A)(1) and (A)(5).  SERB found probable cause to believe that Miami had committed a ULP with respect to each charge, issued complaints with respect to each charge and consolidated the cases for purposes of hearing.  On April 15, 1992, following an evidentiary hearing, a SERB hearing officer issued a proposed order which concluded in part that Miami's "unilateral changes in the wages and terms and conditions of employment *** as well as [its] general refusal to bargain with AFSCME *** constitutes interference and a refusal to bargain, in violation of {{4117.11(A)(1) and (A)(5)."  On October 2, 1992, SERB adopted the order of its hearing officer.

Miami appealed to the Butler County Court of Common Pleas pursuant to R.C. 4117.13(D).  The court of common pleas affirmed SERB's decision, holding that an employer may not unilaterally withdraw recognition of a certified union on the basis of good faith doubt as to the union's majority status. In so holding, the court found itself in disagreement with the decision in New Miami Local School Dist. Bd. of Edn. v. State Emp. Relations Bd. (1989), 57 Ohio Misc.2d 27, 566 N.E.2d 201, also emanating from the Butler County Court of Common Pleas. Instead, the trial court reasoned that since "certification by SERB, and not the majority status of the union, is the key which triggers a public employer's duty to bargain with an employee organization," only SERB can relieve the employer of its duties under R.C. Chapter 4117.

The court of appeals, in a split decision, reversed the judgment of the common pleas court and remanded the case "with instructions to determine if SERB's finding that Miami failed to establish a good faith doubt is supported by substantial evidence."  The appellate court found that SERB's decision "represents a break with its own past decisions, and *** is fundamentally inconsistent with the statutory frame work [sic] of R.C. [Chapter] 4117."

The cause is now before this court pursuant to the allowance of motions to certify the record.

Lee Fisher, Attorney General, and Joseph M. Oser, Assistant Attorney General, for appellant SERB.

Ronald H. Janetzke, Chief General Counsel, and Andrew J. Love, for appellant Ohio Council 8.

Thompson, Hine & Flory, William C. Moul and Bonnie I. O'Neil, for appellee.

Alice Robie Resnick, J.  Under Serb's present policy, an Ohio public employer may not unilaterally withdraw recognition of and/or refuse to bargain collectively with a deemed certified union, despite any good faith doubt the employer may have concerning the union's continuing majority support among the unit's employees.  Instead, an employer may only cease negotiations with a certified union during the pendency of a

decertification or rival union petition after the granting of a stay by SERB.  Thus, an employer is guilty of committing a ULP in violation of R.C. 4117.11(A)(5) where it refuses to negotiate with a certified union following the dismissal of a pending petition.  In re Marion Cty. Children's Services Bd. (October 1, 1992), SERB 92-017, 1992 SERB Official Rptr. 3-54.  This case presents a challenge to that policy.

Miami contends, and the court of appeals held, that SERB's policy, reflected in Marion Cty. Children's Services Bd., is fundamentally inconsistent with the statutory framework of R.C. Chapter 4117 (the Ohio Public Employees Collective Bargaining Act), federal private-sector labor decisions and SERB's own past decisions.  SERB and AFSCME, on the other hand, concede that SERB's present policy regarding good faith refusal to negotiate represents a departure from private sector precedent, but argue that substantial differences between the Ohio and federal statutes clearly warrant a different result.

In assessing SERB's policy, this court must afford deference to SERB's interpretation of R.C. Chapter 4117.  Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 533 N.E.2d 264, paragraph two of the syllabus.  The General Assembly has entrusted SERB with the responsibility of administering the statute, and has bestowed upon it the special function of applying the statute's provisions to the complexities of Ohio's industrial life.  In so doing, it has delegated to SERB the authority to make certain policy decisions.  Our review is limited to whether SERB's policy is unreasonable or in conflict with the explicit language of R.C. Chapter 4117.  Id. at 260, 533 N.E.2d at 266; State Emp. Relations Bd. v. Adena Local School Dist. Bd. of Edn. (1993), 66 Ohio St.3d 485, 496-499, 613 N.E.2d 605, 613-615.  See, also, Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc. (1984), 467 U.S. 837, 865-866, 104 S.Ct. 2778, 2793, 81 L.Ed.2d 694, 717.

It is also important to note the relationship that federal decisions bear to Ohio public sector labor law.  Since "R.C. Chapter 4117's treatment of ULP cases is modeled to a large extent on the federal statutes that empower the NLRB to resolve ULP charges in cases within its jurisdiction *** the NLRB's experience *** can be instructive ***."  Adena Local School Dist. Bd. of Edn., supra, 66 Ohio St.3d at 495, 613 N.E.2d at 612-613.  It is not, however, conclusive.  The prime focus must remain whether the federal approach "comports with the goals of the General Assembly when it enacted those statutes, particularly R.C. 4117.11 (which defines ULPs)."  Id., 66 Ohio St.3d at 494, 613 N.E.2d at 612.  In addition, "[t]he only sources of law whose production binds [SERB] are the General Assembly of Ohio, Ohio courts, and the federal courts (with territorial jurisdiction) when deciding federal constitutional questions.  These are the authorities to which SERB's ligaments of responsibility attach and no others."  In re City of Bedford Hts. (July 24, 1987), SERB 87-016, 1987 SERB Official Rptr. 3-54, at 3-55.

With these principles in mind, we now turn our attention to a review of the relevant authority.  Under the Ohio Collective Bargaining Act, a public employer is required to bargain collectively with an employee organization certified as

the exclusive representative of a unit of public employees. R.C. 4117.04(B). This includes the duty to bargain with regard to "[a]ll matters pertaining to wages, hours, or terms and other conditions of employment." R.C. 4117.08(A). A refusal to bargain collectively constitutes a ULP. R.C. 4117.11(A)(5).

The duty to bargain arises when an employee organization becomes the exclusive representative of a bargaining unit. In order for this to occur, the employee organization must either be certified by SERB pursuant to R.C. 4117.05(A) or be "deemed certified" pursuant to Section 4(A) of Am.Sub.S.B. No. 133, effective April 1, 1984. (140 Ohio Laws, Part I, 367.)

The duty to bargain with an exclusive representative continues so long as the representative maintains its exclusive status. Once certified, the representative's exclusive status is maintained until the representative is displaced in accordance with the procedures set forth in R.C. 4117.07. Displacement occurs following a four step process: (1) a decertification or rival union petition is filed; (2) SERB investigates the petition, and if it finds reasonable cause to believe that a question of representation exists, holds a hearing; (3) if, following the hearing, SERB finds that a question of representation does exist, it must direct an election; and (4) SERB must certify the results of the election. R. C. 4117.07(A).

Prior to the enactment of R.C. Chapter 4117, federal decisions had already embraced the "good faith doubt" doctrine in the private sector. Under this doctrine, an employer who withdraws recognition and refuses to bargain with an incumbant union is not guilty of a ULP if the employer had a good faith or reasonable doubt of the union's continuing majority status. Landmark Internatl. Trucks, Inc. v. NLRB (C.A.6, 1983), 699 F.2d 815; Orion Corp. v. NLRB (C.A.7, 1975), 515 F.2d 81; NLRB v. Dayton Motels, Inc. (C.A.6, 1973), 474 F.2d 328.

Concomitantly, the NLRB wrestled with the effect that the filing of a decertification or rival union petition had on the employer's duty to continue negotiations. In Midwest Piping & Supply Co., Inc. (1945), 63 NLRB 1060, the NLRB held that an employer commits a ULP by recognizing and bargaining with a union where a real question concerning representation exists. In William D. Gibson Co. (1954), 110 NLRB 660, the NLRB permitted an employer to continue bargaining with an incumbent union despite a representation claim by a rival union. In Shea Chemical Corp. (1958), 121 NLRB 1027, 1029, the NLRB overruled Gibson and held that "upon presentation of a rival or conflicting claim which raises a real question concerning representation, an employer may not go so far as to bargain collectively with the incumbent (or any other) union unless and until the question concerning representation has been settled by the Board." This rule was later applied to real questions of representation raised by the filing of a valid decertification petition in Telautograph Corp. (1972), 199 NLRB 892.

In 1982, the NLRB reversed both Shea Chemical and Telautograph and held that the mere filing of a rival or decertification petition will no longer require, or permit, an employer to withdraw from bargaining with an incumbent union. RCA Del Caribe, Inc. (1982), 262 NLRB 963; Dresser Indus., Inc.

(1982), 264 NLRB 1088.  The NLRB explained that:

"As the Midwest Piping doctrine has been applied over the years in cases involving rivalries between incumbent and outside labor organizations, it has become increasingly evident that the Board's efforts to promote employee free choice have been at a price to the stability of collective-bargaining relationships.  In particular the Shea Chemical adaptation of Midwest Piping has failed to accord incumbency the advantages which in nonrival situations the Board has encouraged in the interest of industrial stability.  The recognition of the special status of an incumbent union indicates a judgment that, having once achieved the mantle of exclusive bargaining representative, a union ought not to be deterred from its representative functions even though its majority status is under challenge."  RCA Del Caribe, Inc., supra, 262 NLRB at 965.  This, of course, did not preclude an employer from withdrawing recognition in good faith based on other objective considerations.  Id. at 965, fn. 13.

Against this backdrop, SERB first addressed the issue of whether a public employer in Ohio may decline in good faith to bargain with an incumbent union in In re Cleveland City School Dist. Bd. of Edn. (February 1, 1985), SERB 85-003, 1984-86 SERB Official Rptr. 28.  In considering the issue, SERB noted initially that "[t]he undulating course of NLRB doctrine suggests the possibility of alternative persuasions or, at least, a choice."  Id. at 28, fn. 1.  SERB went on to establish the policy that an employer may justifiably refuse to bargain with an incumbent union where a decertification or rival union petition is filed and a stay is granted by SERB.  Id. at syllabus; In re North Canton City Schools (August 2, 1985), SERB 85-037, 1984-86 SERB Official Rptr. 146; In re West Carrollton City School Dist. (June 26, 1986), SERB 86-026, 1984-86 SERB Official Rptr. 294.

Later, SERB clarified its policy in Marion Cty. Children's Services Bd., supra, SERB 92-017.  In that case, as in this case, the employer refused to bargain with AFSCME based on its assertion of good faith doubt following the dismissal of a decertification petition.  SERB found that the employer committed a ULP by refusing to resume negotiations with AFSCME after the decertification petition which had been pending was dismissed.  SERB did "not agree *** that good faith doubt may be established apart from a pending petition."  Id. at 3-57.  Instead, after acknowledging its departure from NLRB precedent, SERB offered the following explanation:

"Chapter 4117 neither provides for voluntary recognition of bargaining representatives outside the certification process nor contemplates voluntary withdrawal of recognition.  Even when an employer is willing to voluntarily recognize a bargaining agent, this agent must be certified by SERB.  (O.R.C. {4117.05(A)(2)).  Clearly, under Ohio law, certification is the benchmark which triggers a bargaining obligation.

"Only SERB has the power to certify an employee organization as the exclusive bargaining agent, and only SERB can take away such a certification.  The duty to bargain in Ohio Revised Code {4117.08(A) exists as long as a certified or deemed certified exclusive bargaining agent exists and may

temporarily be stayed only by SERB action.

"Accordingly, we do not believe the Ohio statute contemplates allowing an employer to decide unilaterally to terminate a bargaining relationship conferred by certification.

"There is no statutory basis for such unilateral action, and moreover, such action flies in the face of any good labor policy.

"Further, a review of private sector law in the area of good faith doubt convinces us that allowing employers to suspend bargaining obligations on this basis undermines labor stability and proliferates litigation to an extent not warranted by any benefits it affords. *** Allowing employers to suspend bargaining obligations based on good faith doubt creates a conflict between the termination of the collective bargaining process by the employer on one hand, and the statutory duty to bargain with the certified bargaining representative on the other hand. Such a conflict has a resolution in the private sector where the employer may petition the NLRB for a Board-conducted election under Section 9(c)(1)(B) of the NLRA (an RM election). However, this is not the case in the public sector. Chapter 4117 does not contemplate an employer-initiated election where no petition is pending before the Board. Thus, in the public sector, allowing an employer to act on its 'good faith doubt' without Board action leads to an irresolvable conflict, which does not encourage good and sensible public policy. ***" Id. at 3-57 to 3-58.

In reviewing SERB's policy, we note that the absence of any provision relative to the "good faith doubt" doctrine in R.C. Chapter 4117,2 in spite of the substantial body of pre-Act private sector law on the subject, evinces a legislative delegation of policy-making authority to SERB in this area. We cannot say that SERB's policy choice, as reflected in Marion Cty. Children's Services Bd., is unreasonable. Instead, its choice strikes a balance between employee rights and the status of a certified union under the Ohio Act.

Moreover, R.C. Chapter 4117 clearly establishes SERB as the conduit through which Ohio public sector bargaining relationships must pass. Unlike the federal statutes, "[t]he wording of the Ohio Act suggests that, except where the union has enjoyed 'historical' (pre-Act) recognition, a union achieves full status as an exclusive representative only when it has been formally certified by SERB." Drucker, Collecting Bargaining Law in Ohio (1993) 243, Section 6.02(B)(2). Concomitantly, that status can only be displaced by SERB. R.C. 4117.07. It is not inconsistent with this scheme for SERB to preclude the cessation of bargaining without SERB's involvement.

Accordingly, a public employer in Ohio commits a ULP in violation of R.C. 4117.11(A)(5) when it unilaterally terminates bargaining with an incumbent union, despite its good faith doubt as to the union's continued majority status.

In light of the foregoing, the judgment of the court of appeals is reversed, and the judgment of the trial court is reinstated.

Judgment reversed.

Moyer, C.J., Douglas, F.E. Sweeney and Pfeifer, JJ., concur.

A.W. Sweeney and Wright, JJ., concur in judgment only.

FOOTNOTES:
1    Miami appealed SERB's dismissal of the petition for
decertification.  That appeal, however, was ultimately
dismissed on the basis that "Miami lacks standing2under R.C.
119.12 to appeal from a decision of SERB dismissing a
decertification petition filed by a public employee pursuant to
R.C. 4117.07(A)(1)."  Miami Univ. v. State Emp. Relations Bd.
(1990), 70 Ohio App.3d 514, 520, 591 N.E.2d 415, 419.
2    Contrast this with, e.g., 43 P.S. Section 1101.607(ii),
where the Pennsylvania statute specifically provides that "a
public employer alleging a good faith doubt of the majority
status of said representative may file a [decertification]
petition. ***"
      Wright, J., concurring in judgment only.    I concur in
the outcome of this case only because of the differences
between the wording of the Ohio Public Employee's Collective
Bargaining Act and the wording of the National Labor Relations
Act.  Further, I believe the syllabus in this case is too
far-reaching given the issue before us.