[Cite as *State ex rel. Murray v. Ohio State Emp. Relations Bd.*, 2017-Ohio-839.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. David Murray, | : | |
| Relator, | : | |
| v. | : | No. 15AP-1007 |
| Ohio State Employment Relations Board, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |
| | : | |

D E C I S I O N

Rendered on March 9, 2017

**On brief:** *Daniel H. Klos,* for relator.

**On brief:** *Michael DeWine,* Attorney General, and *Aaron Johnston,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, David Murray, commenced this original action in mandamus seeking an order compelling respondent, State Employment Relations Board ("SERB"), to find that he timely filed his unfair labor practice ("ULP") charges, and to issue ULP complaints against his employer, Columbus Division of Police, and his union, Capital Fraternal Order of Police, City Lodge 9 ("FOP").

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that

relator failed to demonstrate that SERB abused its discretion by finding that relator's filing of the ULP charges was untimely. Therefore, the magistrate has recommended that this court deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed objections to the magistrate's decision. Before we address the objections, it is important to identify the statutory framework at issue.

{¶ 4} R.C. Chapter 4117 addresses public employees collective bargaining. "It was clearly the intention of the General Assembly to vest SERB with broad authority to administer and enforce R.C. Chapter 4117. * * * This authority must necessarily include the power to interpret the Act to achieve its purposes." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260 (1988); *State Emp. Relations Bd. v. Miami Univ.*, 71 Ohio St.3d 351, 353 (courts "must afford deference to SERB's interpretation of R.C. Chapter 4117").

{¶ 5} Pursuant to R.C. 4117.12(B), a party alleging an unfair labor practice before SERB must bring the charge within 90 days of the alleged unfair labor practice.[1] By enacting the 90-day limitations period in R.C. 4117.12(B), the General Assembly meant to require employees claiming unfair labor practices to seek redress promptly. *State Emp. Relations Bd. v. Ohio State Univ.*, 36 Ohio App.3d 1 (10th Dist.1987). SERB has held that the 90-day limitations period begins to run when (1) the charging party knows or has constructive knowledge of the unfair labor practice and (2) actual damage to the charging party is caused by the unfair labor practice. *In re City of Barberton*, SERB No. 88-008 (July 5, 1988). Damage occurs when the charging party becomes or should become aware of the injury. *Hubbard Twp. Bd. of Trustees v. SERB*, SERB No. 4-36 (Apr. 11, 1989). SERB's determination of how to calculate that 90-day period is entitled to deference. *Miami Univ.* at 353.

{¶ 6} Mandamus will issue to correct an abuse of discretion by SERB. An abuse of discretion means an unreasonable, arbitrary, or unconscionable decision. *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.*, 95 Ohio St.3d 533, 2002-Ohio-2839, ¶ 35.

---

[1] The statute makes an exception if the charging party is in the military. That exception is inapplicable here.

{¶ 7} Relator's first four objections relate to his 2011-ULP-01-0027 and 2011-ULP-01-0028 charges (failure to arbitrate). In these objections, relator challenges the magistrate's conclusion that SERB did not abuse its discretion in using the date that relator filed his federal lawsuit against his employer (September 3, 2010), as the start of the 90-day limitations period for filing these ULP charges.

{¶ 8} Relator essentially makes two arguments for why SERB abused its discretion in using September 3, 2010, the date relator filed his federal lawsuit, as the start date in calculating the 90-day limitations period. First, relator argues that September 3, 2010 is an arbitrary date because the collective bargaining agreement ("CBA") does not specify when arbitration must occur. Second, relator argues that he had not suffered any actual damage on September 3, 2010. Neither argument supports the conclusion that SERB abused its discretion.

{¶ 9} Even though the CBA did not specify when arbitration must occur, relator alleged in his federal lawsuit a violation of his rights under the CBA, including his right to arbitration. In addition, in a letter explaining why relator filed the lawsuit, his counsel indicated he filed the federal lawsuit, at least in part, to assert his client's right to arbitrate his termination. Relator filed his 2011-ULP-01-0027 and 0028 charges with SERB 122 days after he filed his federal lawsuit. These charges are premised on his employer's failure to arbitrate his termination. Because the failure to arbitrate his termination was the basis for these ULP charges as well as part of his federal claims, we agree with the magistrate that SERB did not abuse its discretion in concluding that relator knew or had constructive knowledge of these alleged unfair labor practices at the time he filed his federal complaint.

{¶ 10} Relator also argues that he was not yet aware that he had suffered any actual damage when he filed the federal complaint. He contends that because potential arbitration dates were still being discussed at the time he filed his federal complaint, he had no knowledge of actual damage relating to the failure to arbitrate. Therefore, he contends that SERB abused its discretion in using the federal filing date as the start date for calculating the 90-day limitations period. We disagree.

{¶ 11} As noted by the magistrate, relator's prayer for relief in the federal lawsuit included a demand for reinstatement, back pay and the value all other benefits due, pre-

and post-judgment interest, attorney fees, court costs, and compensatory damages for emotional distress, shame, embarrassment, loss of self-esteem as well as punitive damages. Given the prayer for relief contained in the federal lawsuit, we cannot conclude that SERB abused its discretion in determining relator had at least constructive knowledge of actual damage when he filed his federal lawsuit.

{¶ 12} Relator was terminated from his employment in 2008. Relator grieved his termination pursuant to the terms of the CBA. His grievance was rejected and relator then sought to have his grievance arbitrated. When no arbitration of his grievance occurred after nearly two years, relator filed a federal lawsuit, in part, to enforce his right to arbitrate under the CBA. Relator's prayer for relief asserted actual damage. After filing the federal lawsuit, relator waited another 122 days to file two unfair labor practice charges with SERB, both of which are premised on the failure to arbitrate. Given these facts, we agree with the magistrate that relator has not shown that SERB abused its discretion in dismissing relator's 2011-ULP-01-0027 and 0028 charges due to relator's failure to comply with the 90-day limitations period contained in R.C. 4117.12(B). For these reasons, we overrule relator's first four objections.

{¶ 13} Relator's fifth and sixth objections relate to his 2011-ULP-12-0330 and 2011-ULP-12-0331 charges. These charges are premised on relator's allegation that his employer and union engaged in unfair labor practices by improperly settling his grievance. Although relator admits he was told on June 23, 2011 that his grievance had been settled in July 2010, he argues that he did not have knowledge of the conduct that is the basis for these ULP charges on June 23, 2011, nor did he suffer actual damage as of that date. He also argues that SERB should have applied the doctrine of equitable tolling in calculating the 90-day limitations period. Relator seems to argue that he did not actually suffer damage until September 29, 2011 when the settlement agreement was officially signed. Again, we disagree.

{¶ 14} It is undisputed that relator was told on June 23, 2011 that his grievance had been settled. Based on that undisputed fact, SERB did not abuse its discretion in concluding that relator had actual or constructive knowledge of these UPL charges on that date. We note that after being told his grievance had been settled, relator immediately sought leave to amend his federal complaint to include claims based on what he

contended was a fraudulent settlement designed to deny him his right to arbitration. Again, his federal complaint alleged actual damage. Based on these facts, relator has not shown that SERB abused its discretion by concluding that relator suffered actual harm as of June 23, 2011.

{¶ 15} Relator learned of the settlement agreement and the alleged fraud on June 23, 2011. Relator asserted that the settlement agreement deprived him of his right to arbitrate, which was one of the claims asserted in his federal lawsuit. This allegedly fraudulent settlement agreement is also the basis for his 2011-ULP-12-0330 and 0331 charges. Relator filed these charges on December 21, 2011, more than 90 days after June 23, 2011. Given these facts, we agree with the magistrate that relator has not shown that SERB abused its discretion when it dismissed these charges. R.C. 4117.12(B). Therefore, we overrule relator's fifth and sixth objections.

{¶ 16} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

TYACK, P.J., and BRUNNER, J., concur.

———————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. David Murray, | : | |
| Relator, | : | |
| v. | : | No. 15AP-1007 |
| Ohio State Employment Relations Board, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | | |
| | : | |

MAGISTRATE'S DECISION

Rendered on August 24, 2016

*Daniel H. Klos,* for relator.

*Michael DeWine,* Attorney General, and *Aaron Johnston,* for respondent.

IN MANDAMUS

{¶ 17} Relator, David Murray, has filed this original action requesting this court issue a writ of mandamus ordering respondent, State Employment Relations Board ("SERB"), to find that he timely filed his unfair labor practice ("ULP") charges, and issue unfair labor practice complaints against his employer, Columbus Division of Police ("Columbus"), and his union, Capital Fraternal Order of Police, Capital City Lodge 9 ("FOP").

Findings of Fact:

{¶ 18} 1. Relator was employed as a police officer by Columbus and was a member of the FOP.

{¶ 19} 2. On August 18, 2008, relator appeared for a hearing before Mitchell J. Brown, the director of the Department of Public Safety. Relator was charged with violating four rules of conduct involving actions taken by relator on or about September 18, 2007. According to the charges, relator divulged police information to a news reporter and failed to advise his superiors of his actions when questioned.

{¶ 20} 3. The director made the following disposition:

> After consideration of the testimony given in the hearing and the reading of Internal Affairs investigation #200709-0271, it is the decision of the Director of Public Safety to uphold the recommendation of the Chief of Police and sustain Departmental Charges I, II, III, and IV and the associated specifications against Lieutenant David Murray #5076. It is the decision of the Director of Public Safety to **terminate** Lieutenant David Murray #5076 from the position of Police Lieutenant for the City of Columbus, Ohio, Department of Public Safety, Division of Police.

(Emphasis sic.)

{¶ 21} 4. Relator was terminated effective September 4, 2008.

{¶ 22} 5. Relator timely filed a grievance through FOP and requested arbitration. After an arbitrator was selected, the parties attempted to coordinate dates for the arbitration.

{¶ 23} 6. According to the FOP bi-weekly grievance/discipline reports contained within the stipulation of evidence, between December 2, 2008 and September 20, 2011, several proposed settlement offers were considered and rejected. During that time, arbitration was still being considered but never occurred. Instead, "[s]ettlement [was] executed on **9/29/11**. Received a letter of resignation from Murray date **10-3-11**, with a demand of backpay." (Emphasis sic.)

{¶ 24} 7. While pursuing arbitration and discussing various settlement proposals, relator filed a complaint in federal court on September 3, 2010. In his prayer for relief, relator requested that he be reinstated, receive backpay, and the value of the benefits he would have received but for his termination, both pre and postjudgement interest on all

amounts received, attorney fees, court costs, and compensatory damages for emotional distress, shame, embarrassment, and loss of self esteem.

{¶ 25} 8. In a letter dated September 7, 2010, counsel for relator explained the reason for filing the complaint:

> The case is captioned David Murray v. City of Columbus and Mitchell Brown Case: 2:10-cv-00797-JDH-MRA. I have forwarded you a copy by email for discussion purposes but I have not yet made service on the waiver and notice. I filed this complaint because as of 9/3/10, 1 day short of 2 years that Lt. Murray was terminated (9/4/08), no arbitration for his grievance has yet been set between the union and the city. As you know, the statute of limitations for 42 U.S.C. §1983 is 2 years.
>
> The filing of this lawsuit was necessary to preserve a forum in which Mr. Murray could seek relief because of the undue length of time that the grievance has been pending arbitration. Mr. Murray, compelled to preserve his causes of action, filed this lawsuit. Should the ultimate decision be to deny Mr. Murray arbitration, he will have a forum in which he may seek relief. However, it is Mr. Murray's assertion that this matter is a proper matter for grievance and that the union and the city have a responsibility at law to Mr. Murray to arbitrate his termination. It is not an election under Section 12.3 of the contract to proceed in federal court on those matters that are subject to arbitration.

{¶ 26} 9. One hundred and twenty-two days later, on January 18, 2011, relator filed two ULPs (2011-ULP-01-0027 against Columbus and 2011-ULP-01-0028 against FOP) alleging that Columbus and FOP collaborated to delay timely arbitration of his grievance and forcing him to file a federal lawsuit.

{¶ 27} 10. In an investigator's memorandum dated June 22, 2011, Tonya D. Jones, a labor relations specialist, summarized the substance of relator's ULPs as follows:

> On January 18, 2011, David Murray (Murray/Charging Party) filed an unfair labor practice charge against Fraternal Order of Police, Capital City Lodge #9 (Union/Charged Party). Charging Party alleges Charged Party violated Ohio Revised Code § 4117.11(B)(1), and (2) by coercing or restraining an employee in the exercise of his guaranteed rights and failing to secure an arbitration hearing date pursuant to the grievance process.

\* \* \*

[Four] Charging Party states the collective bargaining agreement contains certain due process rights for the employees. Charging Party may proceed to grievance arbitration if the Union initiates notice to the Employer through the Safety Director, pursuant to Section 12.5(E)(1)] of the agreement. Charging Party "avers" that Charged Party initiated such notice in accordance with Section 12.5(E). Pursuant to Section 12.5(E)(2)(a), Charged Party and Employer are required to meet within seven (7) days of the notice. Charged Party and the Employer's Safety Director are required to select the name of an arbitrator. The Employer and Charged Party may continue the time limits for required matters under the collective bargaining agreement for mutually agreed upon time periods. The parties will do so in writing pursuant to Section 12.10 of the agreement.

[Five] Charging Party confirms that Charged Party and Employer responded in accordance with Section 12.10 of the agreement that provides for the parties to initially extend the time period for the selection of an arbitrator in order to negotiate. Charging Party states that Charged Party and Employer have caused lengthy delays in the selection of an arbitrator. The delay of an arbitration date forced Charging Party to preserve any potential jurisdictional remedy other than arbitration by filing in Federal Court. Charging Party filed a 42 U.S.C. Section 1983 action against the Employer and the Safety Director to preserve jurisdictional forum because Charging Party has no authority to compel Charged Party or the Employer to proceed to arbitration under the collective bargaining agreement.

[Six] Charging Party states upon the filing of the lawsuit, Counsel for Charging Party informed Counsel for the Employer that he was not electing to proceed in Federal Court as an election of forum, but because of the expiration of the statute of limitations for 42 U.S.C. Section 1983. Charging Party's counsel delayed service of the Complaint in the hope that a showing of good faith would initiate scheduling an arbitration date. Shortly after the filing of the lawsuit on September 3, 2010, the Union and Employer selected an arbitrator, but the Union and Employer could not agree on an arbitration date. The Union was prepared to go forward on November 15, 2010. The Employer was not available on that date.

[Seven] Charging Party states on November 9, 2010 Charged Party informed all parties and the arbitrator, "this date was acceptable to Charged Party and the grievant, but it did not work for the City." On November 9, 2010 an e-mail was sent from Charged Party requesting possible dates in January and February 2011 to conduct the arbitration hearing.

[Eight] Charging Party states it received an e-mail dated December 20, 2010 from Charged Party advising, "In attempting to schedule your arbitration hearing, the City indicated that no date would work in January 2011. Arbitrator Stanton has offered the following dates in February, 2011: February 3, 7, 10, 14, 17, 21, and/or 24, 2011. I cannot do February 10, given a conflict." Charging Party states of all the dates in February, only February 3, 2011 was within the 90 day statute of limitations for filing an unfair labor practice charge.

[Nine] Charging Party states that on January 14, 2011, without any further notice or contact from either Charged Party or Employer regarding scheduling or confirming an arbitration date, Charging Party filed an unfair labor practice charge because there had still not been a date set for arbitration and any reasonable notice period of two weeks had not been given by anyone.

[Ten]  Charging Party further states the unfair labor practice charge is timely because Charging Party brought the charge within 90 days of the notice dated November 9, 2010.

{¶ 28} The memorandum also includes the following findings regarding the position of Columbus and FOP, including:

[Eleven] Charged Party filed a request for arbitration, while efforts were made to settle the matter in a fashion that was acceptable to the parties. Charged Party states that during the time it was negotiating a potential resolution for Charging Party's termination, Mr. Murray applied for and began receiving his monthly retirement benefits from the Ohio Police and Fire Pension Fund. Ultimately, in late July 2010, after extensive discussions and negotiations between the parties, Mr. Murray advised Charged Party that he no longer wanted to seek a settlement of his termination. Although there was a settlement proposal "on the table" at that time, Mr. Murray stated that he was opposed to the terms of that proposal.

[Twelve] Charged Party states that Charging Party's unfair labor practice charge is without merit. It appears Mr. Murray's charge, on its face, indicates that he was compelled to file a federal court action on September 3, 2010, David Murray v. City of Columbus, Case No. 2:10CV797, in order to preserve his right to challenge his termination. The Union contends that in his federal complaint, Mr. Murray argues, in part, that he had been denied due process as a result of the extensive delay in processing his grievance to arbitration, and it is apparent from his unfair labor practice charge and from the content of his federal complaint, that Mr. Murray believed that on September 3, 2010 his grievance was not being processed to arbitration in a timely fashion. If Mr. Murray believed that Charged Party and the Employer were not timely processing his grievance to arbitration on September 3, 2010, he was obligated to file his unfair labor practice charge on or before December 2, 2010. Instead, he waited until January 14, 2011 to file his, charge.

[Thirteen] Charged Party states that, with Mr. Murray's full knowledge and consent, it engaged in lengthy settlement discussions with the Employer, with the goal of fully resolving Charging Party's grievance and termination from employment in a manner that was acceptable to the parties. Mr. Murray was fully aware that Charged Party was actively engaged in an effort to obtain a fair resolution that was reasonable under all of the circumstances presented by his case; and, he was fully aware that this effort was ongoing throughout the time of the alleged delay in the scheduling of the arbitration hearing.

[Fourteen] Charged Party states that Mr. Murray's unfair labor practice charge is erroneously based upon his alleged "right to an arbitration." Mr. Murray, as an individual bargaining unit member, does not have a "right" under either the law or the collective bargaining agreement to insist upon the arbitration of his case. Charged Party as the exclusive representative of the bargaining unit has the sole discretion to determine whether a grievance should be advanced to arbitration. Charged Party states as long as it does not act in bad faith, the decision to arbitrate or not arbitrate a particular grievance does not violate its duty of fair representation.

[Fifteen] Charged Party further states, contrary to Mr. Murray's unfair labor practice charge, it has never "coerced" Mr. Murray in any manner, or "colluded" with the Employer

in a manner that was detrimental to Mr. Murray. Charged Party's representatives spent many hours consulting with Mr. Murray to assess his needs and interests as this matter was negotiated with the Employer.

[Sixteen] Charged Party states that Mr. Murray's reluctance to follow through with a proposed settlement, however, does not mean that he has a "right" to demand that his grievance be arbitrated. Further, there is no allegation and Mr. Murray cannot produce any evidence that Charged Party acted in bad faith in representing him in this matter.

{¶ 29} The investigator recommended that the board dismiss relator's charges with prejudice for lack of probable cause to believe that a ULP was committed and because the filing was untimely.  Specifically, the memorandum provides:

Charging Party alleges Charged Party violated Ohio Revised Code § 4117.11(B)(1) and (2) by coercing or restraining an employee in the exercise of his guaranteed rights and failing to secure an arbitration hearing date pursuant to the grievance process.

The investigation reveals that subsequent to the filing of the grievance, with Mr. Murray's knowledge and consent, Charged Party began settlement negotiations with the Employer concerning Mr. Murray's termination. Mr. Murray later advised Charged Party that he opposed the terms of the settlement and no longer wanted to go forward with resolution of his grievance.

It appears that pursuant to Section 12.5 of the collective bargaining agreement, an arbitrator was selected by the parties and the grievance-arbitration process was underway, but the parties were not able to secure a firm arbitration hearing date.

In re Dist 1199/HCSS/SEIU, AFL-CIO, SERB 96-004 (4-8-96), SERB noted that a (B)(1) violation occurs if the union restrains or coerces employees in the exercise of their protected rights. And if this occurs, SERB will look at the totality of the circumstances. After a review of the information provided, it does not appear Charged Party violated the statute. The Board does not have jurisdiction over the federal lawsuit that has been filed by Mr. Murray. Charging Party did not provide any information to support the (B)(2) allegation.

It also appears the charge is untimely filed. In re City of Barberton, SERB 88-008 (7-5-88), aff'd sub nom. SERB v. City of Barberton, 1990 SERB 4-46 (CP, Summit, 7-31-90), it was determined that two conditions must be present in order to begin rolling of the ninety-day statute of limitations for filing an unfair labor practice charge:

(1) Acquired or constructive knowledge by the Charging Party of the alleged unfair labor practice which is the subject of the charge must be present; and

(2) The occurrence of actual damage to the Charging Party resulting from the alleged unfair labor practice.

Mr. Murray filed the instant charge on January 18, 2011. He was terminated on September 4, 2008. He filed his federal court action on September 3, 2010 regarding the delay in securing an arbitration date. He was notified on November 9, 2010 that [] the November 15, 2010 arbitration date was not good for the Employer.

{¶ 30} 11. Thereafter, the board dismissed relator's ULPs with prejudice as untimely filed.

{¶ 31} 12. On December 21, 2011, relator filed two additional ULPs (2011-ULP-12-0330 filed against Columbus and 2011-ULP-12-0331 filed against FOP) alleging that he recently learned that:

[T]he Grievance was settled between the Union and the Respondent City in July 2010. The Filing Party states that substantial, reliable and probative evidence exist that the Respondent City and Union collaborated to create evidence of a settlement after Filing Party brought a law suit."

{¶ 32} 13. Relator refiled these ULPs on January 13, 2012 amending his charges as follows:

Filing Party was terminated from his position as a lieutenant of police 9/4/2008. Filing Party filed a grievance against the Respondent Employer. The grievance was to be arbitrated by agreement between the Employer and FOP Lodge 9, the labor organization. No arbitration occurred. On September 29, 2011, FOP Lodge 9 and City of Columbus sent Filing Party's Counsel a settlement agreement between the two resolving the Filing Party's grievance without an

arbitration. [Exhibit 1] Filing Party had filed suit in federal Court in September 2010 to preserve a 42 USC §1983 SOL. On June 23, 2011 the FOP and City for the first time, represented to the federal Magistrate that the grievance had been resolved in July 2010. Both represented that the Settlement Agreement (SA) would be produced in two weeks. [T]he document was produced 9/29/11. The City and the FOP collaborated to falsify evidence of a settlement agreement and deprive Filing Party of his arbitration.

{¶ 33} 14. Columbus and FOP asserted that these second ULPs were likewise not timely filed asserting that, construing the facts in relator's favor, he acknowledges that he learned of the settlement agreement on June 23, 2011 yet waited until December 21, 2011 (152 days from the date he admittedly learned of the settlement agreement), to file these additional ULPs disputing the validity of that agreement.

{¶ 34} 15. SERB likewise dismissed these ULPs as untimely filed on January 26, 2012.

{¶ 35} 16. Relator filed a request for reconsideration which was denied February 23, 2012.

{¶ 36} 17. Relator's federal action was dismissed, and a separate state court action he filed in the Franklin County Court of Common Pleas to compel arbitration (*David Murray v. City of Columbus et al.,* Franklin C.P. No. 12 CV 013309 (Oct. 22, 2012)), was likewise dismissed. Further, relator unsuccessfully appealed both the federal and state cases.

{¶ 37} 18. Thereafter, on November 3, 2015, relator filed this mandamus action.

Conclusions of Law:

{¶ 38} For the reasons that follow, the magistrate finds that relator has not demonstrated that SERB abused its discretion when it dismissed his ULPs as untimely and this court should deny his request for a writ of mandamus.

{¶ 39} R.C. 4117.11(A)(1) provides:

It is an unfair labor practice for a public employer, its agents, or representatives to:

(1) Interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code or an employee organization in the selection of

its representative for the purposes of collective bargaining or the adjustment of grievances.

{¶ 40} R.C. 4117.11(B)(1) provides:

It is an unfair labor practice for an employee organization, its agents, or representatives, or public employees to:

(1) Restrain or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code. This division does not impair the right of an employee organization to prescribe its own rules with respect to the acquisition or retention of membership therein, or an employer in the selection of his representative for the purpose of collective bargaining or the adjustment of grievances.

{¶ 41} Relator asserts that Columbus and FOP deprived him of his right to arbitration and, in so doing, committed ULPs.

R.C. 4117.12 (A) and (B) provide, in pertinent part:

(A) Whoever violates section 4117.11 of the Revised Code is guilty of an unfair labor practice remediable by the state employment relations board as specified in this section.

(B) When anyone files a charge with the board alleging that an unfair labor practice has been committed, the board or its designated agent shall investigate the charge. If the board has probable cause for believing that a violation has occurred, the board shall issue a complaint and shall conduct a hearing concerning the charge. * * * The board may not issue a notice of hearing based upon any unfair labor practice occurring more than ninety days prior to the filing of the charge with the board, unless the person aggrieved thereby is prevented from filing the charge by reason of service in the armed forces, in which event the ninety-day period shall be computed from the day of the person's discharge.

{¶ 42} The parties agree that the collective bargaining agreement does not provide a timeline for when arbitration would occur. Relator asserts that, given that there is no set timeline, he did not know when he should file a ULP asserting that Columbus and FOP were collaborating to deny him the right to arbitrate. It is clear however that the 90-day

period commences when the charging party knew or should have known of conduct which constituted the improper conduct and actual damage occurred.

{¶ 43} The board asserts that on September 3, 2010, the day relator filed the federal lawsuit demanding a right to arbitration, should be used as the date from which the 90-day period commenced. Relator argues that this date is incorrect because he still believed he could compel arbitration through the filing of the federal lawsuit and did not consider that he had any damages. Relator asserts that the 90-day time period should commence from November 9, 2010, the date he was informed that the arbitration scheduled for November 15, 2010 was not going to happen.

{¶ 44} As noted in the findings of fact, settlement negotiations were ongoing for two years, back and forth between the parties. Further, relator does not dispute that, ultimately an agreement was reached.

{¶ 45} A writ of mandamus is appropriate only where a relator demonstrates an abuse of discretion. A writ of mandamus is only appropriate where the exercise of administrative discretion implies not merely an error of judgment, but a perversity of will, passion, prejudice, partiality, or moral delinquency. *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.,* 95 Ohio St.3d 533, 2002-Ohio-2839.

{¶ 46} Generally, this court will not review a decision of SERB not to issue a complaint based on a ULP charge. That conclusion is consistent with this court's decision in *Ohio Assn. of Pub. School Emp., Chapter 643, AFSCME, AFL-CIO v. Dayton City School Dist. Bd. of Edn.*, 59 Ohio St.3d 159 (1991), in which this court held in the syllabus that "[a] decision by the State Employment Relations Board whether or not to issue a complaint in an unfair labor practice case is not reviewable pursuant to R.C. Chapter 119 or R.C. 4117.02(M) and 4117.13(D)." Because there is no direct right of appeal in this situation, the third requirement for mandamus is present in this case, in that relator has no adequate legal remedy available.

{¶ 47} This court normally accords great deference to a decision SERB has made on a particular issue. "It was clearly the intention of the General Assembly to vest SERB with broad authority to administer and enforce R.C. Chapter 4117. * * * This authority must necessarily include the power to interpret the Act to achieve its purposes." *Lorain City Bd. of Edn. v. State Emp. Relations Bd.,* 40 Ohio St.3d 257, 260 (1988). Although

this court does not often readily question a decision SERB has made, our willingness to defer to SERB is not unlimited. When, as here, a genuine controversy exists regarding when a ULP "occurs," SERB should be required to give some explanation of its finding of untimeliness.

{¶ 48} The magistrate finds that relator has not demonstrated that SERB abused its discretion by finding that the filing of his ULPs was untimely.

{¶ 49} In his federal lawsuit, relator alleged that he was being deprived of his due process right to be heard concerning his termination and asked the court to order Columbus to reinstate him to his position of lieutenant as if his employment had been continued, award him all back pay and the value of all other benefits due, prejudgment interest and postjudgment interest as well as attorney fees and court costs, and award him compensatory damages for emotional distress, shame, embarrassment, loss of self-esteem as well as punitive damages. The reality is that, although relator argues that his federal lawsuit was an effort to do nothing more than compel arbitration, it is clear that he was asking the court to order Columbus to reinstate him to his position and award him back pay and other benefits to which he would have been entitled had he not been terminated. Relator's demands indicate he knew he had been damaged by the failure of Columbus and FOP to move forward in the arbitration. Finding that the relief which relator sought was not to compel arbitration but to compel Columbus to reinstate him, the magistrate finds that SERB did not abuse its discretion by using the date he filed his federal lawsuit as the day that relator knew of the ULP and that actual damages had occurred. As such, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).